HENDERSON & SON *v.* REYNOLDS.

1. After the submission of the evidence and the charge of the court, the jury having been sent to their room about half past eight

o'clock on Saturday night, and sometime before twelve o'clock the judge having sent the sheriff to inquire if the jury were likely to agree, and having received from the jury a reply that they were not, it was error to call the jury in about half an hour afterwards and tell them that it was nearly 12 o'clock, that the next day being Sunday they would have to cease their deliberations until after midnight of the next day, that during that time they were not to discuss the verdict or anything connected with the case, that they would have to keep together during the entire day and night, that the sheriff would provide a place for them to sleep together, and that they would be furnished their meals but at their own expense.

2. Where the trial of a case is commenced on a week day, and the evidence, argument and charge of the court are concluded, and the jury retire before the end of the day, and the verdict is not agreed upon until the early hours of Sunday, it is no legal or moral wrong for the judge to receive the verdict and allow the jury to disperse.

(a) The only standard of time in computation of a day, or hours of a day, recognized by the laws of Georgia, is the meridian of the sun ; and a legal day begins and ends at midnight, the meantime between meridian and meridian, or 12 o'clock *post meridiem.* An arbitrary and artificial standard of time, fixed by persons in a certain line of business, cannot be substituted at will in a certain locality for the standard recognized by the law.

December 16, 1889.

Verdict. Jury and jurors. Practice. Time. Sunday. Before Judge WINN. Cobb superior court. March term, 1889.

Reported in the decision.

J. B. ALEXANDER and W. R. POWER, by HARRISON & PEEPLES, for plaintiffs in error.

C. D. PHILLIPS and CLAY & BLAIR, *contra.*

SIMMONS, Justice.

1. It appears from the record in this case that Henderson & Son brought their action of complaint against Reynolds. After the evidence had all been submitted to the jury, and the charge of the court delivered, the jury were sent to their room about half past eight on Saturday night. Some time before twelve o'clock the judge sent the sheriff to inquire of the jury if they were likely to agree. The sheriff reported that the jury told

him they were not.  About half an hour after, the court ordered the jury brought in, and told them it was nearly twelve o'clock, and that the next day being Sunday, they would have to cease their deliberations until after midnight of the next day; that during that time they were not to discuss the verdict or anything connected with the case; that they would have to keep together during the entire day and night; that the sheriff would provide a place for them to sleep together; and that they would be furnished their meals, but that it would be at their own expense.  The jury were then sent back to their room, and in a few minutes returned with a verdict.  This, in substance, is the 8th ground of the motion for a new trial.

We think the court erred in refusing to grant a new trial upon this ground.  In the case of *Physioc* v. *Shea*, 75 *Ga.* 466, it was held error for the court to state in effect, after the jury had been out all night without supper or breakfast, that they would not be allowed their meals except at their own expense.  "This operated as a threat to starve such as had no money into finding a verdict, and resulted in a speedy finding." The instructions given by the trial judge in that case were in substance the same as given in the case under consideration.  In that case the judge told the jury that they could have breakfast at their own expense.  In this case the judge told the jury that they must be kept together from twelve o'clock Saturday night until Monday morning, and could have meals at their own expense; and in both cases the result was that the jury agreed upon a verdict within a few minutes after such instructions.  In the case cited the court says, "The old idea of starving juries to coerce a verdict has passed away, and the judge is empowered to furnish refreshments at the expense of the county." We are not surprised that this jury should agree so quickly,

after being instructed by the judge that they would be kept together for more than twenty-four hours longer and at their own expense. It may have been that the very jurors who were holding out against the proposed verdict were unable to pay for their meals, and therefore agreed to the verdict rather than go without food until the court should meet again the next Monday morning.

2. The 9th and 10th grounds complain that the verdict was made and returned on Sunday. The judge ran the court by railroad or "standard" time, which was twenty-two minutes behind the sun time, the verdict being rendered at two minutes before twelve by the railroad time, and twenty minutes after twelve by the sun time. It was contended in the argument before us that as the railroad or "standard" time is now used in all the cities and towns along the line of the railroads, that time should be observed by the courts instead of the meridian or sun time; and that the judge in this case having announced at the beginning of the term that he would run the court by the railroad or "standard" time, the verdict was received on Saturday, instead of Sunday. The trial judge, in his note to these grounds of the motion, seems to take this view of the law. We do not agree with him therein. The law, which is strict and requires certainty where time enters into legal duty, fixes that time with reference to a certain, unvarying and uniform standard, than which none could be more certain. The only standard of time in the computation of a day or the hours of a day, recognized by the law of Georgia, is the meridian of the sun; and a legal day begins and ends at midnight, the meantime between meridian and meridian—or twelve o'clock "P. M.," *post meridiem,*—twelve hours after meridian. The code, where it mentions the hours of a day, usually affixes "M." meridian, "A. M." and "P. M."—

before and after meridian, to indicate this standard. As instances see §§1286, 1287, 1312. The civil day begins and ends at 12 o'clock midnight. Anderson's Dic. of Law, "Day," p. 311.

It seems idle to waste words in saying that the standard of time fixed by persons in a certain line of business, cannot be substituted at will by persons in a certain locality for the standard recognized by the statutes of the State as well as the general law and usage of the country; especially when it is considered that such an arbitrary and artificial standard could as easily fix five o'clock for midnight, as it could twenty minutes past twelve, as was done in this case. Local custom cannot in this way change Sunday into Saturday. To expect courts of justice, officers of the law and the public generally, especially that large class of the population who do not live in cities or at railroad stations, to go to the railroads for the time which is to guide them in the performance of their duties under the law, when they have in the heavens above them a certain standard by which to ascertain or regulate the time, or to permit them at will to follow two standards of time, would be highly impracticable, and would be productive of great uncertainty and confusion in the administration of the law. Thus the legality of elections might be made to depend upon conflicting proof of local custom; for what might be considered a legal election in one precinct might be regarded as illegal in the next precinct, because of the time of opening or closing the polls; or the people of a precinct might differ among themselves as to this. And so with regard to the enforcement of the criminal law. The law requires the railroads to cease running their freight trains by eight o'clock on Sunday mornings. Code, §4578. To allow the railroads to fix the standard of time would be to allow them at pleasure to violate or

defeat the law. Even in cities, where it is insisted the adoption of railroad time has become general, the same difficulties might exist; for instance, in the city of Augusta in this State, which is at the dividing line of two railroad standards, the railroads which enter the city from the east having one standard of time, and the railroads which enter from the west another standard, an hour different, both differing considerably from the meridian or sun standard.

But while we think the court erred in its view as to the time when Saturday expired and Sunday began, we do not think its refusal to grant a new trial on the ground that the verdict was received on Sunday was error. We do not think that the reception of this verdict on Sunday rendered it invalid or void. It seems to us that it was a very proper thing for the court to do. It was much better to receive this verdict upon Sunday morning than to keep twelve jurors and the officers attending them confined in a room throughout the Sabbath and for nearly thirty-six hours. It was an act of charity and of necessity to receive this verdict, so that the jurors could return to their homes for rest and refreshment during the night, and if they so desired, could attend public worship during the day. Where the trial of a case is commenced on a "week day," and the evidence and argument and the charge of the court are concluded and the jury retire before the end of the day, and a verdict is not agreed upon until the early hours of the Sunday, we do not think it wrong in morals or in law for the trial judge to receive the verdict and allow the jurors and officers to go home and spend the Sabbath. There is now very little conflict in the courts of this country upon this question. The great and decided weight of authority is in favor of receiving verdicts on Sunday. The case of Hiller v. English, 4 Strob. L. (S. C.) 486, is one of the leading

cases upon this subject. In the discussion of that case Mr. Justice Wardlaw says (p. 500), "It was then charity to the jurors to receive and publish their verdict when they were ready to present it. Their duty was done, why should they have been punished? If the observance of the Lord's day by them, was looked to, it was surely better to permit them to be at home, to take their natural rest, and to join in public worship if they would, than to lock them up during the Sunday, uncomfortable, dissatisfied and ill-suited to each other, as they probably would have been." This decision also shows that the case of McCombs v. Shaw, 2 Bay, 232, which has been frequently cited in support of the invalidity of receiving verdicts upon Sunday, was incorrectly reported, and that the decision of that case was not as stated by Judge Bay ten or fifteen years after the decision was made.

In the case of Cory v. Silcox, 5 Ind. 373, it is said : "The verdict of the jury was returned and received by the court on Sunday. We will not elaborate this point. Much useless learning has recently been displayed upon it by able jurists, and some variety of opinion has been the result. While we admit that many cases are to be found in the books deciding that no judicial act can be done on Sunday, and that verdicts returned on that day are void, we are not satisfied that we would be subserving morality, religion, justice or the spririt of the common law by following their example as to verdicts. The reason of the rule making Sunday *dies non juridicus*, was founded in those principles of religion which require a strict observance of that day, and surely that which tends to its non-observance cannot be regarded as being within the reason of the rule. We apprehend that jurors, worn out by the laborious investigation of a lengthy case, and unnecessarily pent up together from twelve to twenty-four hours, would be

little inclined, while in that condition, to observe the Sabbath as they should. We can easily conceive of places where there minds would be far more religiously inclined."

In the case of Stone v. Bird, 16 Kan. Rep. 494, Brewer, J. (now a justice of the Supreme Court of the United States), in discussing this question says : "The great weight of authority goes to this extent (and it is sufficient to sustain the proceedings in this case) that where the trial is completed by the introduction of testimony, the arguments of counsel and the charge of the court, and the case has passed to the jury for consideration before midnight of Saturday, the fact that they do not finally arrive at and return their verdict until sometime in the early hours of Sunday morning, does not vitiate the entire proceedings and compel a retrial."

In the case of Baxter v. The People, 3 Gilman, 385, Caton, J., in discussing this question says: "But although the law seems to be well-settled that a judgment cannot be entered of record on Sunday, yet I think it equally well-settled that a verdict of a jury may be entered of record on Sunday. . . We think the authorities clearly establish that when a cause is submitted to the jury before twelve o'clock on Saturday night, the verdict of the jury may be received on Sunday; but that is not a judicial day for the purpose of rendering any judgment, and if it attempt to render a judgment, still, in law, it would be no judgment, but absolutely void, and will be so declared, and may be reversed by this court : not that such reversal will take from it any force or vitality, for it never had any, not having been rendered by a court having authority to render any judgment whatever at the time."

In the case of Reid v. State, 53 Ala. 402, Judge Manning says: "We are of opinion that when a jury, to whom a cause has been submitted on a Saturday or

other secular day of the week, are lawfully kept together under charge of officers of court, and are ready on Sunday to deliver in their verdict, it is lawful for the judge then to meet them with the other officers of court to receive it, and thereupon to discharge the jury and adjourn the court until the next day."

In the case of Webber v. Merrill, 34 N. H. 202, it was held that a verdict may be lawfully returned on Sunday if the case has been committed to the jury before that day.

In the case of Sargeant v. Butts, 21 Vt. 99, Judge Redfield says : "The arbitrators might retain the case under consideration during Sunday, and make their award upon another day, or close it at the earliest possible moment, and then set themselves to the appropriate celebration of the Lord's day, freed from the care of this and other worldly anxieties of a secular character. The latter course to us seems the more consistent with that unostentatious humble-mindedness which is so befitting the Christian profession."

In the case of Huidekoper v. Cotton, 3 Watts (Pa.), 59, it is held that a judgment is not erroneous because the verdict upon which it was rendered was delivered on Sunday.

See also Rosser v. McColly; 9 Ind. 587 ; McCorkle v. State, 14 Ind. 39 ; Joy v. State, Id. 139 ; True v. Plumley, 36 Me. 466 ; Butler v. Kelsey, 15 Johns. 177 ; Hoghtaling v. Osborne, Id. 119; State v. Ricketts, 74 N. C. 187 ; State v. McGimsey, 80 N. C. 377.   See also 12 Am. Dec. 291, note ; also a full discussion of this subject and citation of authorities pro and con, 9 Pac. Rep. 808, and note on the same subject in 3 N. E. Rep. 12.

It may be argued, however, that this court in the case of Bass v. Irvin, 49 Ga. 436, held a contrary doctrine to the views above announced.   The reasoning of the court in that case, we admit, is in conflict with the views we have

announced in this case, as well as in conflict with all the other authorities we have been able to find, except the case of Davis v. Fish, 1 Green (Iowa), 410, and the case of Shaw v. McCombs, 2 Bay, 232, referred to in Hiller v. English, 4 Strob. (S. C.) 486, *supra.* We have already seen that the case of Shaw v. McCombs was improperly reported, and it is said in the notes to 9 Pac. Rep. *supra,* that the case of Davis v. Fish is no longer law in Iowa. We do not think it was necessary to the decision in *Bass* v. *Irvin* for this court to go as far as it did in its reasoning upon this question. In that case a verdict had been obtained that was written upon the wrong paper, and no judgment had been entered. A motion was made to transfer the verdict to the proper declaration in the case, and to enter up upon judgment thereon *nunc pro tunc.* The defendant was called upon to show cause why the motion should not be granted, and he showed for cause that no legal verdict was rendered in said case, the pretended verdict having been returned on the Sabbath day in the absence of, and without the consent of, the defendant. The facts seem to be that the judge opened his court on Sunday and received the verdict in the absence of the defendant or his counsel, and without their knowledge. We think that, under this state of facts, the judgment rendered by the court was perhaps right. We do not think the trial judge had a right on Sunday, in the absence of the parties, to go to the court-house, open the court and receive the verdict; for the parties had a right to be present when the verdict was received. This court as now constituted would follow that case under an exactly similar state of facts, unless we were called upon to review it, but we would not feel bound by all of the reasoning of the decision.

We reverse the judgment of the court below because of the refusal to grant a new trial on the 8th ground of the motion.                    *Judgment reversed.*