STATE v. O. P. JOHNSON.

December 2, 1898.

Nos. 11,340—(15).

Intoxicating Liquors—Hour of Closing Saloon—Re-enactment of Statute—Standard Time.

In 1878, before the present standard time had been established in this state, the legislature enacted Laws 1878, c. 75, providing that places where intoxicating liquors were sold should be closed at 11 o'clock at night. After the present standard time had been established by universal usage, the legislature passed Laws 1889, c. 87, re-enacting the law of 1878, with certain amendments, but retaining the provision of that

act relating to the hour of closing. *Held*, that the amendatory act is to be construed as referring to standard time, as established at the time of its passage and still in use.

Defendant was indicted and found guilty by a jury of keeping his saloon open after 11 o'clock at night.    From an order of the district court for Polk county, Ives, J., denying a motion to set aside the verdict and grant a new trial, defendant appealed.   Affirmed.

*H. Steenerson* and *W. E. Rowe,* for appellant.

It was the absolute duty of the state, in order to sustain a conviction, to prove beyond a reasonable doubt that the defendant kept his saloon open after 11 o'clock p. m.   See 2 Bishop, Cr. Proc. §§ 131–134; State v. Whit, 4 Jones L. (N. C.) 349; Houser v. State, 58 Ga. 78.

Judges should take great care to say nothing in the hearing of the jurors, while the trial is progressing, which can possibly be construed to the prejudice of either party.  See Cronkhite v. Dickerson, 51 Mich. 177; Walker v. Coleman, 55 Kan. 381; Wheeler v. Wallace, 53 Mich. 355; 16 Am. & Eng. Enc. 520–524.

The only standard of time in the computation of a day or the hours of a day is the meridian of the sun.   Henderson v. Reynolds, 84 Ga. 159.  See also 26 Am. & Eng. Enc. 10; Searles v. Averhoff, 28 Neb. 668; Parker v. State, 35 Tex. Crim. App. 12.

*H. W. Childs* and *George B. Edgerton,* for respondent.

MITCHELL, J.

The defendant was indicted, tried and convicted of keeping his saloon open after 11 o'clock at night contrary to the provisions of G. S. 1894, § 2012.   The offense is alleged to have been committed in June, 1898, in the city of Crookston.

Upon the trial the defendant offered to prove that, although his saloon was not closed until 20 minutes after 11 o'clock, standard time, it was closed some 6 minutes before 11 o'clock, according to local sun time, which at Crookston is 26 minutes and 40 seconds slower than standard time.    The court excluded this evidence, holding that the case was governed by the standard time which had been established by universal usage in this state.   The same point

arose during the trial in various ways, as, for example, upon instructions to the jury given or refused. This presents the only important question in the case.

This statute was enacted in its original form in 1878 (Laws 1878, c. 75), and re-enacted in its present and amended form in 1889 (Laws 1889, c. 87). In both its original and amended form, the hour for closing places where intoxicating liquors are sold is the same, viz., 11 o'clock at night.

When the original act was passed in 1878, the present standard time had not been adopted or come into use. The standard time then in use was "Northfield time," just as "Chicago time" and "New York time," etc., were in use in other parts of the country, and "Greenwich time" in England. This is what is called mean or standard sun time, as distinguished from local sun time, as shown by a sundial; which, of course, varies with every change of longitude, and which was never in use in this state, and, since the day of railroads, is practically obsolete in every civilized country.

In 1883 the railroads of the United States and Canada adopted four kinds of standard time, viz., Eastern, Central, Mountain and Pacific, each applicable to a region covering approximately 15 degrees of longitude; in each case the standard being actual sun time at the central degree of longitude of the region to which the particular standard time was applicable. The state of Minnesota fell wholly within Central time, which was actual sun time at the ninetieth meridian of west longitude.

All standard mean times are based on sun time, but, for the sake of uniformity, sun time at some particular point is adopted as the standard.

The only substantial difference between the standard time now in use and that in use in 1878 is that, as the former embraces more degrees of longitude than the latter, it necessarily follows that at places the difference between it and local sun time is greater than it was under the standard time formerly in use.

The standard times adopted by the railroads in 1883 were soon adopted by the people,—in some parts of the country sooner than others,—and have long since become the sole standards of time throughout the United States. Cent. Dict. tit. "Time." In Minne-

sota, Central time was promptly adopted, and long before 1889 was in universal use, and established as the sole standard of time, in both public and private business. No other is ever used or referred to.

Counsel's contention is that this statute having been originally passed in 1878, before the present standard time was in use, it must be construed as referring to the standard time in use when the act was passed. Even if this is so, the statute would not refer to local sun time at Crookston, for that was never in use.

My own opinion is that, even if the statute of 1878 had never been amended and re-enacted, it should be construed with reference to the standard time established by law or usage at the time the offense is committed. On this, however, we are not all agreed. But we are all agreed that as the act, with amendments, was re-enacted after the present standard time was established by universal usage, it should be construed as referring to the standard time then and still in use.

We are not unmindful of the general canons of construction that, when a statute is amended "so as to read as follows," the provisions of the original statute retained in the amendatory act are to be deemed as having been in force all the time, and that words used in an amendatory statute are presumed to be used in the same sense in which they were used in the original. But to this latter rule there are exceptions, or rather cases which do not fall within it, and this, we think, is one of them.

We never had any statute in this state establishing any standard time. That matter has been left wholly to usage or custom. Neither the original nor the amendatory statute in terms adopts any standard of time. Under these circumstances, we are of opinion that the amendatory act should be construed as meaning the standard time in common use when the act was passed, and which is still in use.

When sustaining the objection to the evidence offered by defendant as to the difference between standard time and local sun time, the trial judge remarked:

"I shall certainly deprive this defendant, and all others, of any such buncombe as this for a defense."

There may be a difference of opinion as to the good taste of this remark. It was certainly provoked by defendant's own counsel in misstating the previous ruling of the court. But we fail to see how the remark could have prejudiced the defendant, when made merely with reference to a legal proposition, with which the jury had nothing to do.

There is nothing in the point that it did not appear whether the time referred to by the witness was 11 o'clock p. m. or 11 o'clock a. m. While no witness expressly stated that the time to which he referred was p. m., yet it is perfectly apparent that throughout the trial every one—witnesses, counsel and court—so understood it. The defense which defendant attempted to interpose as to the difference between standard and local sun time conclusively shows this.

Order affirmed.