## SALT LAKE CITY v. ROBINSON.

No. 2201.   Decided May 12, 1911.   On Application for Rehearing
June 14, 1911 (116 Pac. 442).

1. MUNICIPAL CORPORATIONS—CITY ORDINANCE—VIOLATION—NATURE
   OF PROCEEDINGS. A proceeding against a saloon keeper for sell-
   ing liquor after hours prescribed in a city ordinance is criminal,
   not civil, in its nature, and is governed by the rules pertaining
   to criminal prosecutions for misdemeanors.   (Page 263.)

2. JURY—RIGHT TO JURY TRIAL—MISDEMEANORS—VIOLATION OF CITY
   ORDINANCE. Though a prosecution against a saloon keeper for.
   selling liquor after hours, in violation of a city ordinance, is
   criminal in its nature, accused is not under all circumstances
   entitled to a jury trial in the city or police court, under the
   rule that if for minor or petty offenses accused is entitled to
   an appeal, and on such appeal may submit his case to a jury,
   the right to a trial by jury is not invaded because no jury is
   permitted in the city or police court.   (Page 264.)

3. EVIDENCE—JUDICIAL NOTICE—TIME—SYSTEM. Where a contract
   is enforceable in a city other than that where the court is held,
   the court cannot take judicial notice of what system of time,
   whether standard or solar, is in general use in such other city,
   but such fact must be established by evidence.   (Page 267.)

4. CRIMINAL LAW—JUDICIAL NOTICE—TIME. Where accused was
   charged with selling intoxicating liquor after hours, in violation
   of a city ordinance, the city police court where the prosecution
   was initiated and the district court to which it was taken on
   appeal, sitting in such city, would take judicial notice that
   standard, as distinguished from solar, time was in general use
   in such city.   (Page 269.)

5. CRIMINAL LAW—JUDICIAL NOTICE—TIME. The Supreme Court
   may take judicial notice of the historical fact that the system
   of time known as standard time has been officially recognized
   by the national government, and that the United States has
   been divided for a third of a century into zones or belts com-
   posed of fifteen degrees of longitude, which zones commence
   with the meridian which is seventy-five degrees west from
   Greenwich, and which for many generations has been recognized
   as a standard meridian.   (Page 269.)

6. TIME—STATUTES—CITY ORDINANCE—CONSTRUCTION.—STANDARD OR
   SOLAR TIME. Where a city ordinance made it unlawful for any
   person to sell intoxicating liquors between midnight and six

o'clock a. m. on any day of the week, the time for opening and closing should be determined by standard, as distinguished from solar, time; standard time being generally used in the city where the ordinance was adopted, though the ordinance was criminal in its nature and should be strictly construed, under the rule that when time is a material ingredient, so far as a statute or ordinance is concerned, courts will apply the time in general use, and not that which by common consent has been discarded and become obsolete. (Page 270.)

### ON APPLICATION FOR REHEARING.

7. COSTS—TAXATION AGAINST ACCUSED—APPEAL. Const., art. 1, sec. 12, provides that in no instance shall any accused person, "before final judgment," be compelled to advance money or fees to secure the rights guaranteed. Comp. Laws 1907, sec. 4966, declares that in criminal cases both the clerk of the district court from which an appeal is taken, and the clerk of the Supreme Court, must perform all the services usual in appeal cases without charge. *Held*, that where accused on appealing from a conviction has not shown himself impecunious, and obtained the right to prosecute the appeal as a poor person, as provided by sections 727, 1016, he is liable on affirmance for costs provided by Supreme Court rule 11 (97 Pac. viii), relating to the printing of briefs on appeal, though not for fees otherwise payable to the clerk. (Page 274.)

STRAUP, J. (dissenting).

APPEAL from District Court, Third District; *Hon. T. D. Lewis,* Judge.

H. F. Robinson was convicted of violating an ordinance of Salt Lake City prohibiting the sale of intoxicating liquor after twelve o'clock at night, and he appeals.

AFFIRMED.

*S. P. Armstrong,* for appellant.

*H. J. Dininny* and *P. J. Daly* for respondent.

FRICK, C. J.

This is an appeal from a judgment convicting the appellant of selling intoxicating liquor to-wit, beer, at a time when it is alleged such sale was prohibited by the ordinances of Salt Lake City. The original complaint or information

charging appellant with the offense was filed in the city or police court of Salt Lake City, and, after trial there, he appealed from the judgment of conviction to the district court of Salt Lake County, and from a like judgment in that court appeals to this court.

The information and conviction are based upon an ordinance of Salt Lake City which went into effect April 7, 1909, and which, so far as material, reads as follows:

"It shall be unlawful for any person . . . to sell, give away, serve, or otherwise dispose of any spirituous, vinous, malt, beer, or other intoxicating drink, at any time on the first day of the week, commonly called Sunday, or between twelve o'clock midnight and six o'clock a. m. on any day of the week."

The first question presented is whether a proceeding which is based upon an information charging a person with the violation of the provisions of an ordinance of a city of this state is civil or criminal. As a matter of fact, the question, in this case, is important only for the purpose of determining the rule of construction to be applied and as it may affect the payment of costs. The district court in trying the case proceeded upon the theory that it was a criminal prosecution, as contended for by appellant, tried the case and instructed the jury upon that theory, and hence the appellant has no cause for complaint on that ground. With respect to the costs, the matter is, however, different. If proceedings instituted for the purpose of procuring convictions for the violations of ordinances are criminal, then one rule with respect to the payment of costs prevails; while if they are civil, then another and different rule must be applied. Counsel for appellant contends further that if convictions for the violations of municipal ordinances must be obtained by criminal prosecutions, then the rule of strict construction applies. It is for these reasons, therefore, that it becomes necessary for us to determine whether the proceeding in question is civil or criminal.

Whether proceedings to punish for violations of municipal ordinances are in their nature civil or criminal is a ques-

tion upon which the decisions of the courts are conflicting. The weight of authority seems to incline to the view that such proceedings and the consequences flowing therefrom are civil, or at most quasi criminal. Mc-Quillin, Municipal Ordinances, in discussing the nature of such proceedings (section 304) says:

"The weight of judicial authority declares that the prosecution is in the nature of a civil action for the recovery of a debt. Sometimes the action is regarded as criminal, especially where the offense constitutes a misdemeanor under the laws of the state."

We think the true rule is stated by Mr. Dillon, in his excellent work on Municipal Corporations (4th Ed.) section 411, where, in discussing this subject he says:

"The cases on this subject are not harmonious, but the difference in them depends, to a large extent, upon the character of the act or offense charged, the nature of the charter, and of the legislation in a particular state as to the extent of jurisdiction intended to be conferred upon the municipal authorities."

If the statute under which the cities of this state are chartered is examined, it will be observed that the power conferred upon cities with respect to the punishment for violations of city ordinances is treated the same as is the punishment for statutory misdemeanors generally. The penalties, usually may be the same and may be enforced in the same manner; that is, by fine and imprisonment, or by both. Nor, as a general rule, is the right to sentence to imprisonment to the city jail made dependent on a failure to pay a fine, but imprisonment may be imposed as a part or as the sole punishment. Moreover the courts of this state have always regarded the proceedings instituted for violations of ordinances as in their nature criminal, and not civil. Trials, so far, as we are aware have always been conducted upon that theory. Again the rules of evidence and the quantum of proof, as well as the rules of construction and procedure applicable to criminal prosecutions, have always been applied and enforced in prosecutions for violations of city ordi-

nances by the courts of this state. In addition to this, there are many sections of our statute relating to the general subject now under consideration from which it is apparent that the framers of those sections regarded the proceedings in such cases as in their nature criminal, and not civil. We are clearly of the opinion that, under our statutes, prosecutions like the one at bar are in their nature criminal, and that the rules pertaining to criminal prosecutions for misdemeanors under the statute are applicable.

By what we have said we do not mean that the accused may, under all circumstances, demand a jury trial in the city or police courts. The general rule to be deduced from the authorities upon this subject is to the effect that for minor or petty offenses, if the accused is given the right to an appeal and upon such appeal may submit his case to a jury, that the right of a trial by jury is not invaded or denied, although no jury be permitted in the city or police court. It is only just to counsel for appellant to state that he conceded the rule to be as we have stated it.

This brings us to the important question in the case. As we have seen, appellant was convicted of having sold beer, an intoxicating liquor, between the hours of twelve o'clock midnight, and six o'clock a. m., during which time such sales were prohibited by the ordinance in question. The policeman who made the arrest, and who apparently apprehended the appellant while in the act of selling the beer in question, testified in substance that the sale occurred "at twenty or twenty-five minutes after twelve," midnight; that he looked at his watch at the time, and that it was regulated according to the time that is generally observed in Salt Lake City. This time is known as standard mountain time and on Main Street of Salt Lake City is twenty-seven minutes, thirty-six seconds faster than solar time. Appellant contends that "midnight," as mentioned in the ordinance, is not reached until the sun passes a point called the "nadir," which is directly opposite a point called the "zenith" in Salt Lake City. In other words, counsel contends that midnight in Salt Lake City, under the ordinance in question, must be determined

according to solar, and not according to standard mountain time. Upon the other hand, counsel for the city contend that standard mountain time is the time that is universally observed in Salt Lake City, and that that time, therefore, must control. The question, therefore, is, What system for the measurement of time is to be applied to the ordinance— standard mountain or mean solar time? Counsel for appellant has cited us to some cases in which he contends it is held, where a particular hour is fixed for the expiration of a contract, or where time is mentioned in a statute, or where an act must be done before a specified hour, such as noon or midnight, then the legal presumption is that mean solar time is intended or meant. It is insisted that the following cases support the doctrine contended for. *Jones v. German Ins. Co.,* 110 Iowa, 75, 81 N. W. 188, 46 L. R. A. 860; *Rochester, etc. Ins. Co. v. Peaslee, etc. Co.,* 120 Ky. 752, 87 S. W. 1115, 89 S. W. 3, 27 Ky. Law Rep. 1155, 28. Ky. Law Rep. 130, 1 L. R. A. [N. S.] 364; *Henderson v. Reynolds,* 84 Ga. 159, 10 S. E. 734, 7 L. R. A. 327; *Searles v. Averhoff,* 28 Neb. 668, 44 N. W. 872.) Counsel has cited some other cases, but in our judgment, they are not in point here.

The case of *Jones v. German Ins. Co., supra,* was decided by the Supreme Court of Iowa in 1899. In that case the question involved was whether an insurance policy which according to its terms, expired at "noon" of a certain day should be governed by solar or standard time. If the former time governed, the policy was still in force, for the reason that the fire started at eleven o'clock and forty-five minutes a. m., or fifteen minutes before the hour of noon, the time when the policy expired; but if standard time controlled, then the policy had ceased to be in force for the space of two and one-half minutes when the fire started. The court he'd that the presumption was that the parties to the contract intended solar time, and that the burden of proof was on the insurance company to show that some other time was meant. The question was accordingly submitted to the jury, and they very naturally found that solar time was meant, and that the policy was still in force when the fire started.

The case of *Rochester, etc. Ins. Co. v. Peaslee, etc. Co., supra,* was a case where the facts were identical with those in the Iowa case just referred to. In the latter case, however, if solar time was meant, then the policy had expired about two and one-half minutes when the fire started; but if standard time was intended, then the policy was still in force, as in the Iowa case. In that case the jury again found against the company, but to do so was compelled to find that standard, and not solar, time was intended. The juries thus had no difficulty in finding that solar time controlled in Iowa, while standard time controlled in Kentucky. There is, perhaps, no inconsistency between the two verdicts.

*Henderson v. Reynolds, supra,* merely involved the question of what time controlled with respect to the opening and closing of courts, and the court held that the only time in force in Georgia was solar time. This case was decided in 1889.

The case of *Searles v. Averhoff, supra,* was decided more than twenty years ago, and the court in that case held that the presumption was that solar time was meant in fixing the hour in a summons within which the defendant had to appear in a justice court for trial.

In the case of *Orrik & Olson v. Casselman,* 15 N. D. 34, 105 N. W. 1105, decided in 1905, the question of whether a judicial sale was or was not held prematurely was involved. The sale there in question was held according to standard time, and it was held that the court would take judicial notice of the fact that standard time was the system of time generally observed and used by the people of the State of North Dakota, and hence was the time at which judicial sales should be opened and held. The sale in question was held in 1896, and it was held that standard time was in general use in that state then, and that the court had judicial knowledge of such fact. In that case the Iowa, Nebraska, and Georgia cases are referred to, but the court declined to follow them.

The case of *Globe, etc. Ins. Co. v. David Moffat Co.,* 154 Fed. 13-21, 83 C. C. A. 91, 99, is also an insurance case in-

volving the question of whether a policy of insurance was in force or not when the fire started. The case was tried and decided by the United States Circuit Court sitting in New York City. In New York State a statute is in force which in substance provides that "all courts, public offices and official proceedings" shall be regulated by standard time. Of course, this statute had no effect upon contracts, and the court practically so held. The court, however, in referring to standard time as applicable to New York City, said: "Business in this city has conformed itself to this regulation so universally that this court will take judicial notice of existing conditions." The court then proceeds to show that all callings in that city conform their conduct and business to standard time, and hence held that that system of time is in force there. The policy in question in that case, although issued in New York City, was, however, held not to be a New York contract; and hence the court could not take judicial notice of whether standard or solar time was in use and controlled in the particular city in the State of Virginia where the fire occurred and where the contract of insurance was enforceable. In referring to the system of time in use in a foreign state and how the courts regarded the question, the court said:

"It would seem to be the proper disposition of a case, where the court cannot take judicial notice of the conditions, to receive testimony as to what they were."

By conditions the court meant the system of time which prevails and is in general use in a particular city or community.

In a case, therefore, where a contract is enforceable in a city, other than where the court is held, the federal court holds that the question of what system of time is in general use in such other city cannot be determined by the court by taking judicial notice, but becomes a question of fact, to be determined in accordance with the rule laid down in the Iowa and Kentucky cases. That this may also be true of different localities in the same state there

cannot be much doubt, especially in so far as contractual relations are concerned. In our judgment the true rule is laid down by the federal court to which we have referred.

Applying that rule, therefore, or, for that matter, the rule announced in any one of the cases referred to, what system of time should prevail in the case at bar, standard mountain or solar time? It seems to us that there is—that there can be no escape from the conclusion that the city council of Salt Lake City, in fixing the hour in the ordinance after which sales of intoxicating liquors are unlawful, intended that the former, and not the latter, time should control. Let us pause for a moment and examine into the condition prevailing in Salt Lake City with regard to what system of time was observed by the people for many years prior to and at the time when the ordinance in question was adopted.

During all of the time aforesaid, and at the time the ordinance was passed, it was known to the mayor and to every councilman of Salt Lake City that every train, if on time, departed and arrived in conformity with standard mountain time; that the street car system of Salt Lake City was operated in accordance therewith; that every bank, every stock exchange, every office, public or private, and every business house that was opened or closed at a fixed time opened and closed according to said time; that every parent, every schoolboy, and every schoolgirl knew that every pupil attending our public schools must be in attendance in conformity with standard time, or suffer the consequences of being tardy; that every child in Salt Lake City whose age came within the provisions of the curfew ordinance at the time the ordinance in question was passed knew that the curfew whistle sounded and would continue to sound its unwelcome notes, which usually are heard throughout the city, in accordance with the standard time; that every court, federal and state, including this court, opened and closed so as to conform to that, and to no other, time; that every judicial, execution, tax, or any other sale authorized by law, or which is advertised to be held at a particular time, was opened and held in accordance with said time; that all of the

churches, theaters, postoffice, general and branch offices, and all other public places, opened and closed according to standard time; that every time regulator in every jeweler's window or in any public place, was regulated by and registered exclusively standard time; that the national naval observatory at Washington, D. C., had, over the wires of the Western Union Telegraph Company, for more than a quarter of a century, registered time in accordance with the system of standard, and not solar time; that the owner of about every clock or watch in Salt Lake City, if he pretended to be in harmony with his neighbors, adjusted his time-piece according to standard, and not solar, time; and finally it may be said that the town clock in the city hall tower, which faithfully registers the hours as they pass into days, and under whose unerring and unfailing chimes the city council sat and passed the ordinance in question on the very night of the day it was adopted, and for years prior thereto chimed forth the hour of midnight according to standard time. Such, then, were the conditions which prevailed in Salt Lake City when the ordinance in question was passed.

Of these conditions the city court in which the proceeding in question was begun was bound to take judicial notice, and of what that court was required to take judicial notice the district court, as the appellate court, was likewise required to take judicial notice. For the same reason that the district court was required to take judicial notice of the system of time in use in Salt Lake City, this court must do so. McQuillin, Mun. Ords., section 363.

But this court may also take notice of the historical fact that the system of time known as standard time has been officially recognized, if not legally adopted, by our national government for almost a third of a century; that this country, during the whole of said time, has been divided into zones or belts composed of fifteen degrees of longitude, which zones commence with the meridian which is just seventy-five degrees west from the meridian of Greenwich, England, which latter, for many generations,

has been recognized as a standard meridian. In addition to our own country, fifty-six other nations and countries have adopted the system of standard time, so that the entire circumference of the earth is divided into artificial time belts or zones, each of which covers just one hour of time, and the time registered throughout an entire zone is precisely the same. The system of standard time is therefore in general, if not universal, use throughout the civilized world. When, therefore, the system is and has been in universal use, as in Salt Lake City, or as in New York City, as illustrated in the case of *Globe, etc. Ins. Co. v. David Moffat Co., supra,* the courts not only may, but should take judicial notice of that fact; and when time is a material ingredient, at least so far as laws are concerned, courts should apply the time in general use, and not that which by common consent has been discarded and has thus become obsolete.

The question involved in this case was decided by the Supreme Court of Minnesota, in the case of *State v. Johnson,* 74 Minn. 381, 77 N. W. 293, in 1898. The only difference between that case and this is that the hour at which sales became illegal in the State of Minnesota was fixed by statute at eleven o'clock at night. The court held that it would take judicial notice that standard time, and not solar time, was in general use in the State of Minnesota; and hence it was held that the accused had violated the statute, although according to solar time he might have continued business for some six minutes longer at the time of his arrest. Notwithstanding the fact, however, that standard time was in universal use in Salt Lake City, and every man, woman, and child knew it to be so, we are asked to hold that either solar time controlled, or that the ordinance in question is ambiguous and uncertain with respect to what system of time was intended; and hence the question of what time was intended should be submitted to a jury as a question of fact. In determining what particular system of time may have been intended by parties to contracts, where there are two systems of noting time, it may well be that under certain circumstances the courts cannot take judicial

notice of what time was in fact intended, and that the question should be determined, as was done in the cases to which reference has been made.

Such a rule can, however, not be applied to public statutes or ordinances, and we know of no rule of law or practice whereby a court can shirk the responsibility of determining the meaning of a particular statute or ordinance. If a statute is so uncertain that its meaning cannot be ascertained after the courts have applied and exhausted the ordinary rules of construction, the courts are compelled to declare the statute void for uncertainty. Moreover, to submit a question like the one involved here to a jury must inevitably lead to greater confusion. If it were done, no one would know what a particular ordinance meant in any case, until after the jury had returned their verdict, and then the ordinance would still be as uncertain for any future case as it was before the last one was determined. Mr. Smith might thus on one day be convicted of having sold beer after the hour of midnight, while Mr. Jones might be acquitted of the same offense, although he had sold beer at precisely the same moment of time as Mr. Smith had. Mr. Smith's sale would be held to have occurred by standard time, while Mr. Jones' sale would be treated as having taken place by solar time. Such a method was sought to be applied in the Minnesota case to which we have referred, but the court, as it was bound to do, refused to sanction it. It is manifest that statutes or ordinances must mean the same thing to all, and when once interpreted that interpretation must prevail until changed by some court having power to do so. Where laws like the ordinance in question relate to prevailing conditions, the courts must take judicial notice of what such conditions are and declare accordingly. Such matters come within the rule that courts must "judicially recognize whatever has the requisite certainty and notoriety in every field of knowledge, in every walk of practical life." (2 Lewis' Suth. Stat. Const. [2d Ed.], section 464.)

As already intimated, the question of whether the courts will in any particular case determine, as a matter of law.

what system of time should control in cases of contracts we do not decide. That question can best be determined when all the facts and circumstances which may have affected the parties to the contract are before the court. We are now dealing with a local ordinance which was passed under conditions which were known to all within the territorial limits where the ordinance was intended to operate. These conditions we are bound to judicially recognize and enforce.

It is, however, contended that the rule of strict construction applies to the ordinance in question. Grant this, and still the conclusion we have reached must prevail. When the intention which was in the minds of the framers of the statute or ordinance is once ascertained, no construction is permissible, and the only power courts have is to declare such intention. In view of the prevailing conditions in Salt Lake City when the ordinance in question was adopted, it must be assumed that the city council intended standard, and not solar, time, and no rule of construction, however strict, can make the intention otherwise.

The further contention that the evidence is insufficient to justify a finding that the liquor sold was beer is not tenable. In our judgment all of the essential elements constituting the offense charged were established, either by direct evidence or by facts and circumstances from which the jury might infer the ultimate fact. While the court, perhaps, in direct terms should have charged the jury that standard time must control, yet, in view that the jury must have so found in order to convict the appellant, and as such a finding is the only one permissible under the facts and the law, appellant has suffered no prejudice, and hence cannot complain.

For the foregoing reasons, the judgment is affirmed. Costs to be taxed against apppellant.

McCARTY, J., concurs.


STRAUP, J. (dissenting).

I dissent. It needs no extended argument to show that there is at Salt Lake City, as elsewhere in the United States,

a solar time and a standard time; that the latter at Salt Lake City is twenty-seven minutes and thirty-six seconds faster than the former; and that courts will take judicial notice of both, and of the difference of time between them. Because of such facts and notice, when time is expressed in statutes, ordinances, contracts, and other writings, by the use of the words "noon," or "midnight," or other similar terms, if not aided or controlled by other terms, an uncertainty or patent ambiguity arises as to which time, solar or standard, was intended. When found in a policy of insurance the ambiguity, if unaided, is generally construed most strongly against the insurer, on the familiar principle that ambiguous terms in such contracts are construed most strongly against the insurer and in favor of the insured; in statutes, ordinances, or official proceedings relating to or involving official acts or conduct, the ambiguity is resolved in favor of the officer and of his official acts and conduct, in order to uphold and to give effect to them; and in penal statutes or ordinances the ambiguity is liberally construed in favor of him who is charged with the violation of their provisions. Because courts take judicial notice of both solar and standard time, and of the difference of time between them, an ambiguity arose in the ordinance by the use of the terms "between twelve o'clock midnight and six o'clock a. m." There is nothing else in the ordinance to aid the ambiguity. Arising as it does in a penal ordinance, the ambiguity, under the familiar rules of construction, ought to have been resolved in favor of the defendant, not by the jury, but by the court whose duty it was to construe the ordinance.

The defendant requested the court to do so, and to instruct the jury to return a verdict of not guilty; the evidence, without dispute, showing that the liquor was sold before twelve o'clock midnight, solar time. The court refused this request. Then the defendant also requested the court to charge the jury the difference in time, between solar and standard time, and to charge them that the presumption is that solar time was intended by the use of the language in the ordinance, "twelve

39 Utah—18

o'clock midnight," etc. This request was also refused. The court declined to construe the ordinance, and failed and declined to charge the jury which time, solar or standard, was intended, or which should be considered by them in determining the guilt or innocence of the defendant. It charged the jury that the burden was on the plaintiff to show that the defendant sold the liquor "after the hour of twelve o'clock midnight, and before the hour of six o'clock following," and that if they found that he sold the liquor "within hours prohibited by the ordinance," and that such sale was not for medicinal purposes, they should find him guilty.

The construction of the ordinance, in respect of its intended meaning as to solar or standard time, or the time which should be considered in determining the case, was therefore left entirely to the jury, wholly unaided and uncontrolled by the court. Instead of so leaving the matter to the jury, I think the court should have determined it.

## On Application for Rehearing.

FRICK, C. J.

Appellant has filed an application for rehearing and for a modification of the judgment rendered against him for costs. He asserts that no costs can be taxed against him under the Constitution and statutes of this State. Article 1, section 12, of the Constitution of this state, so far as it relates to costs, provides: "In no instance shall any accused **7** person, *before final judgment,* be compelled to advance money or fees to secure the rights herein guaranteed." (Italics ours.) Compiled Laws 1907, section 4514, is a transcript of the foregoing provision. Section 4966, the only other section that directly relates to the taxation or recovery of costs, provides that in criminal cases both the clerk of the district court from which the appeal is taken, and the clerk of this court, must perform all the services usual in appeal cases without charge. It follows, therefore, that in criminal appeals no costs can be taxed for fees or costs that are usually taxed as clerks' fees.

There are other statutory provisions from which it is manifest that after judgment of conviction—that is, after a final judgment has been entered against a defendant in a criminal prosecution—he no longer need be, nor is, protected by the state against costs. Nor is there any good reason why the taxpayers of this state should provide the means whereby those who are convicted of crime may have their cases reviewed on appeal by this court, unless such persons avail themselves of the statutory provision intended for those who are impecunious, and hence unable to pay the costs on appeal. By referring to sections 727 and 1016, it will at once be seen how and under what circumstances one accused of crime, even after conviction, may escape the payent of costs. We know of no other way that one convicted of crime may escape the payment of costs after final judgment, except by following the methods pointed out by the section referred to. Moreover section 5155 provides that any one who is convicted of a crime may be. punished by fine or imprisonment, or by both, and that such punishment may be with or without costs; and section 4925 provides that if costs are imposed the payment thereof may be enforced by execution, as in civil cases. There seems to be no doubt that after final judgment that one who has not shown himself unable to pay costs by reason of his impecuniosity may, and ordinarily should, have the costs taxed against him. While in this court no costs may be taxed for clerk's services, yet at least the costs provided for by Rule 11 (97 Pac. viii) of this court, which the state is required to pay for printing briefs, should be taxed against appellant.

As the judgment entered by the clerk of this court in this case in terms is broad enough to cover all costs, it is ordered that the same be, and it hereby is, modified so far as to include only the costs that may be taxed, as provided by Rule 11 of this court.

In view of what has been said, it follows that the application for a rehearing should be denied. It is so ordered.

McCARTY, J., concurs. STRAUP, J., dissents.