[Civ. No. 2228.   First Appellate District.—December 21, 1917.]

BANK OF FRUITVALE (a Corporation), Appellant, v. FIDELITY AND CASUALTY COMPANY OF NEW YORK (a Corporation), Respondent.

INSURANCE LAW—STANDARD TIME.—Under a policy of insurance against loss from robbery and burglary between certain hours, the parties must be held to have contracted with reference to standard time, where in that part of the policy which fixes the attaching and termination of the insurance it is specified that standard time should control.

ID.—REVISION OF POLICY—INSUFFICIENCY OF COMPLAINT.—A policy of insurance is not subject to revision under section 3399 of the Civil Code on the ground that the company did not issue a policy covering the particular risk applied for, where no facts are pleaded showing that the company knew or could have known that the in-

sured would not examine the policy when issued to him, or that the company or its agent took any affirmative action to prevent such examination.

APPEAL from a judgment of the Superior Court of Alameda County. Everett J. Brown, Judge.

The facts are stated in the opinion of the court.

Chas. C. Boynton, for Appellant.

Chickering & Gregory, and Winfield Dorn, for Respondent.

KERRIGAN, J.—This is an appeal from a judgment in favor of the defendant after an order sustaining its demurrer to the plaintiff's fifth amended complaint.

The action was brought upon a policy of insurance against inside or outside robbery for a loss alleged to be covered by the policy. The complaint is in two counts, and the facts therein stated show that plaintiff is a banking corporation doing business in the city of Oakland, where it maintains a main office and a branch office in different parts of the city, keeping its money and valuables at the main office and conveying some portion thereof by a custodian to and from its branch office every day before and after business hours, which were from 8 A. M. to 5 P. M. daily except on Saturday, when its two places of business were kept open until 9 P. M.

On October 8, 1913, having received a request from plaintiff for a policy of insurance protecting it against loss from robbery and burglary, defendant sent one of its agents to plaintiff to obtain its application therefor. At this visit the agent of the defendant was told by one of the officials of plaintiff that the bank desired a policy of insurance to protect it against loss by robbery, such loss to be covered in Saturday evenings up to 9 o'clock. No assurance was given to the plaintiff that such a policy would be issued, but the application was reduced to writing by the agent and sent to the defendant, which in acknowledging its receipt on October 10, 1913, in a letter to its agent, stated that the company was covering the plaintiff as of the date of October 15, 1913, on which date the defendant issued and delivered a policy of insurance, which by its terms covered plaintiff against loss of the character indicated but only up to 8 :30 P. M. on Satur-

days.   Upon receipt of this policy the plaintiff placed it in its vaults without reading it, and had no further communication with the defendant with reference thereto until after the occurrence of the loss.

On Saturday evening, February 21, 1914, and for a long time prior thereto, plaintiff had in its employ an armed guard, a trustworthy person, who was specially directed and instructed by plaintiff to accompany its custodian while conveying plaintiff's money and valuables between its places of business, such attendance on Saturday evenings being required of him between the hours 5 and 9 o'clock.   On said evening the guard remained constantly with plaintiff's custodian until about the hour of 8:15, when, without the knowledge or consent of plaintiff, he left his place of duty, and the custodian remained unattended.   A few minutes thereafter, about the hour of 8:34 P. M. standard time at Oakland, California, and 8:25 P. M. mean time for the meridian of that city, while plaintiff's custodian was conveying money and valuables from its branch office to its main office, he was held up and robbed of two thousand three hundred dollars, the property of plaintiff.   Other allegations of the complaint will appear in the course of this opinion.

The respondent, in upholding the action of the trial court in sustaining defendant's demurrer to the fifth amended complaint, contends that said complaint states no cause of action, for the reason that it appears therefrom, first, that the custodian when robbed of the bank's funds was not accompanied by an armed guard; second, that the loss occurred at a time not covered by the insurance; and, third, that the facts pleaded do not entitle the plaintiff to a reformation of the policy as prayed.

As to the first of these points, one of the provisions of the policy reads: "The insurance provided by this policy attaches specially and as stated below in section a to f respectively . . . "; and section c of that part of the policy, which was made the subject of special indorsement, attached as a rider to the policy, reads: " . . . in an amount of two thousand dollars to the loss of property . . . in the care and custody of the custodian unaccompanied by a guard except between the hours of 5 P. M. and 8:30 P. M., when the custodian will be accompanied by one guard."   The respondent argues that these provisions of the policy constitute a condition upon

which the insurance attaches; that between 5 P. M. and 8:30 P. M. money of the bank in possession of the custodian was not insured unless the custodian was accompanied by the armed guard. On the other hand, plaintiff contends that the insurance company was not exonerated by the negligent disregard of his duty by the armed guard employed by plaintiff, its theory being that the requirement as to this guard was a warranty on the part of the plaintiff which was complied with by the employment of the guard, and that the latter's dereliction of duty in no way affects plaintiff's right to recover.

The conclusion we have reached as to the other points in the case will make it unnecessary to pass upon this contention.

Referring to the second point made by plaintiff for a reversal of the judgment, we think that it must be held that the parties contracted with reference to standard time. In that part of the policy which fixes the attaching and termination of the insurance the parties specified that standard time should control. Having so contracted in one part of the policy, a reasonable and logical construction requires that other points of time in the policy, in the absence of a specific provision to the contrary, should be determined to be the same standard. Section 1875 of the Code of Civil Procedure enumerates "the measure of time" as one of the facts of which courts take judicial notice; and since the year 1883 standard or railroad time has been uniformly recognized and adopted as the measure of time in this state. Here and elsewhere throughout the country the time of the arrival and departure of trains is governed by standard time; street-cars are also operated with reference thereto; banks, stock exchanges, and public and private offices are opened and closed according to standard time. Mortgage foreclosure sales and sales under deeds of trust in this state are governed by standard time, as also legal notices by lawyers and business men. Some of the authorities supporting this view are: *Rochester German Ins. Co.* v. *Peaslee,* 120 Ky. 752, [9 Ann. Cas. 324, 1 L. R. A. (N. S.) 364, 87 S. W. 1115, 89 S. W. 3]; *State* v. *Johnson,* 74 Minn. 381, [77 N. W. 293]; *Salt Lake* v. *Robinson,* 39 Utah, 260, [Ann. Cas. 1913E, 61, 35 L. R. A. (N. S.) 610, 116 Pac. 442]; *Globe etc. Ins. Co.* v. *David Moffat Co.,* 154 Fed. 13, [83 C. C. A. 91].

It is the final contention of the appellant that if it is not entitled to recover under the terms of the policy as written by reason of the precise moment when the loss occurred, the policy should be reformed so as to cover the risk up to 9 o'clock P. M. instead of 8:30, as written in the policy.

In this regard appellant contends that its application for insurance together with defendant's letter of October 10, 1913, to the latter's agent, constituted a preliminary contract of insurance under which the plaintiff was insured against robbery of the character indicated up to the hour of 9 o'clock on Saturday evenings; and that when the defendant delivered its policy to plaintiff covering only up to 8:30 P. M. without calling attention to the change, plaintiff was led to believe, and was warranted in believing, that the policy had been issued in exact accordance with the application and with this preliminary insurance, and was justified in accepting the same without examination.

The letter, however, was not addressed to the plaintiff but to the defendant's agent; and while it used the word "covering," it did not purport to create a temporary arrangement for insurance pending the formal execution of a policy. In fact, the letter states that the plaintiff will be covered as of the date October 15th, which is the precise day upon which the policy itself was issued. It is therefore apparent that the language of the letter now sought to be availed of by the plaintiff referred only to the issuance of the policy itself.

Section 3399 of the Civil Code, upon which the present contention of the appellant is based, reads as follows: "When, through fraud or a mutual mistake of the parties, or a mistake of one party, which the other at the time knew or suspected, a written contract does not truly express the intention of the parties, it may be revised on the application of a party aggrieved, so as to express that intention, so far as it can be done without prejudice to rights acquired by third persons, in good faith and for value." The only fact alleged in the complaint which it is claimed entitles plaintiff to the benefit of the application of this section of the code is that the defendant did not issue a policy covering the particular risk applied for. This circumstance would have justified plaintiff in refusing to accept the policy; but it is far from constituting fraud, or a mutual mistake of the parties, or a mistake of one party which the other at the time knew or suspected—

the conditions enumerated in the section necessary to entitle a party to a revision of a contract. Certainly no facts are pleaded showing that the defendant knew or could have known that the plaintiff would not examine the policy when issued to it; nor that the defendant or its agent took any affirmative action to prevent such examination. The plaintiff is, therefore, not entitled to a revision of the policy.

For the foregoing reasons we conclude that the court committed no error in sustaining the demurrer to the fifth amended complaint, and in entering judgment for the defendant.

Judgment affirmed.

Lennon, P. J., and Richards, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on February 18, 1918.