## WARD v. YORBA.*

### L. A. No. 372; August 2, 1898.

54 Pac. 80.

**Vendor and Vendee.—A Contract to Convey by Good Title was** made between persons, both of whom claimed the premises by paramount title; but at the time of making the contract the vendee, acting on the advice of counsel, conceded the vendor's title to be the better one. The vendor testified that he agreed to convey only his interest, which was corroborated by another, and not denied by the vendee. Held, that a finding that the provision requiring a good title was inserted by mistake was justified.

**Vendor and Vendee—Mistake.—The Vendor and the Vendee** Each claimed the premises by paramount title, and the vendee's counsel erroneously advised him that his title was inferior. The vendee knew all the facts on which this advice was based, and thereupon contracted to buy the vendor's interest. Held, that he was not entitled to be relieved from the contract on the ground of mistake, under Civil Code, section 1577, defining a mistake as an unconscious ignorance or forgetfulness of a material fact, or a belief in the existence of a material thing which does not or did not exist.

**Vendor and Vendee—Consideration.—The Vendor and the Vendee** Adversely claimed land in the former's possession worth $9,000, the vendee claiming under an attachment for $1,300. Held, that the vendee's agreement to purchase the vendor's interest for $4,750 was supported by a valuable consideration, though it afterward appeared that the vendee's title was the better one.

---

*For subsequent opinion in bank, see 123 Cal. 447, 56 Pac. 58.

APPEAL from Superior Court, Los Angeles County; Waldo M. Yorke, Judge.

Action by Shirley C. Ward against Vicente Yorba to reform a contract to sell lands, and for specific performance as reformed, and for damages. Judgment for plaintiff, from which, and from an order denying a motion for a new trial, defendant appeals. Affirmed.

Geo. H. Smith for appellant; A. M. Stephens for respondent.

CHIPMAN, C.—Action to reform a contract of sale and purchase of a certain parcel of land situated in the city of Los Angeles, and to specifically enforce the same when reformed, and for damages. The pleadings are verified. Plaintiff had judgment from which, and from the order denying a new trial, defendant appeals upon a statement of the case. The findings are quite lengthy, but the salient facts may be briefly summarized as follows: The premises in controversy originally belonged to one Francisca D. de Labracco, and both plaintiff and defendant claim title through this common source—plaintiff by sale on execution to one Jarvis (who conveyed to plaintiff) at suit of one Bacon; and defendant by attachment proceedings at his own suit. Plaintiff's deed took effect as of date March 31, 1892, and defendant's March 5, 1892, by relation. The validity of defendant's attachment proceedings was in dispute at all the times mentioned in the findings. The property involved was worth $9,000. A suit was pending against Labracco, in which one Javier Yorba and one Davilla were plaintiffs, wherein it was claimed that Labracco was trustee of the title for plaintiffs in that suit; but it was found that defendant had knowledge of this action, and claimed to be able to control it. There was also a judgment lien for $312.75 on the property, of which defendant had full knowledge at the time he entered into the contract, the subject of the controversy. Plaintiff was in possession under his deed, and on February 10, 1893, the parties began negotiations looking to the sale by plaintiff and the purchase by defendant of plaintiff's interest in said property for the sum of $6,000, at which time both plaintiff and defendant believed defendant's attachment lien to be subordinate to the judgment lien through which plaintiff claimed title. On

February 24, 1893, a controversy arose between the parties as to their respective claims, the defendant claiming that his right was superior to plaintiff's; and on that day defendant offered to sell his interest to plaintiff for $1,300 (the amount of his judgment in the attachment), or he would pay plaintiff $4,750 for his interest in the property, which latter proposition plaintiff accepted, and a written agreement was accordingly on that day entered into; but by mistake the agreement was drawn so as to obligate plaintiff to convey a good and perfect title, whereas the agreement was that he should convey only his interest in the property. Defendant knew all the facts relating to the title at the time the agreement was entered into, and was acting upon the advice of counsel then present. Defendant agreed to pay $100 cash in hand, which was done, and $4,650 in thirty days, which he failed to do. The consideration to defendant was plaintiff's compromise of his claim of superior title, dependent upon defendant's imperfect attachment proceeding mainly. The court, as conclusion of law, found that plaintiff was entitled to judgment (1) reforming the contract as prayed for, and (2) for the sum of $4,650, with interest at seven per cent per annum from March 24, 1893, amounting in all to $5,789.25, and for costs of suit; and judgment was accordingly entered. Appellant relies upon the written contract, which it is conceded respondent cannot perform. Respondent claims that he can perform the actual agreement, and stands ready to do so. We do not understand appellant to dispute that the findings support the judgment, but his contention is that the evidence does not support the findings. We assume that the points relied upon are those presented in the briefs of respective counsel.

1. Appellant insists that the evidence fails to show that the actual agreement was different from the written agreement, or that there was any mistake in the drafting of the latter, and that it devolved upon respondent to make out a good title, which it is found he failed to do. Appellant concedes that a "vendor may stipulate that the purchaser shall accept the title as it is," but he adds that "such conditions should be looked at with great jealousy, as they are often traps for the unwary, and the court should at least expect the fact to be broadly stated that the seller only sells such title as he has, without warranting the same"; citing 1 Sugd. Vend., pages

29, 30 (24), and pages 455, 456 (390, 391); Haynes v. White, 55 Cal. 38, and other cases. If the evidence clearly showed that the actual agreement was as it was found to be by the court, the case is brought within the principle invoked. Upon this point the evidence is somewhat, but not seriously, conflicting. On the day the contract was entered into there met in the office of Mr. Meserve—respondent's attorney—Mr. Meserve and respondent; Mr. Munday, appellant's then attorney, and appellant; and Mr. Sanchez, who was brought in by and as interpreter for appellant, who could not himself "talk or understand English." Mr. Unger, who made the abstract, was present part of the time. As to what took place at this meeting, which resulted in the contract being signed then and there, Mr. Meserve, Mr. Munday. and Mr. Ward, respondent (and Mr. Unger to some extent) testified on behalf of respondent, and Mr. Sanchez and appellant on behalf of appellant. We have carefully read this testimony, and while there is a decided and sharp conflict as to one or two facts that will be noticed hereafter, as to the fact that respondent was offering to sell only whatever interest he had in the property the evidence is clear, and is not denied by appellant in his testimony; and on his cross-examination Sanchez testified: "Q. Did you hear Mr. Meserve tell Mr. Munday all we were selling was the right, title and interest such as was acquired under the Jarvis deed? A. Yes, sir; I heard Mr. Yorba say he thought he could control the Davilla suit. He said, 'I can fix it with my brother and mother all right.' This was at the time of signing the contract." It was testified to by respondent's witnesses, two of whom understood some Spanish, that what was said by and to appellant's attorney and by and to respondent's attorney during the negotiations was communicated to appellant by the interpreter. We think there was sufficient evidence to support the findings, and that the parties understood perfectly that respondent was selling and appellant was buying only such interest or title as respondent then had, and that the written instrument did not express the true intent of the parties in this regard. The contract was drawn by respondent's attorney as soon as the parties had reached an agreement, and both signed it. How it happened to be drawn as it is was not explained by any witness. It was drawn by the attorney of respondent (who is himself an attorney), and it is urged that on this account

the rule in such cases should apply with especial force. Section 1639 of the Civil Code provides that "when a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone, if possible; subject, however, to the other provisions of this title." Section 1640 reads: "When through fraud, mistake, or accident, a written contract fails to express the real intention of the parties, such intention is to be regarded and the erroneous parts of the writing disregarded." Here the ground relied upon is mistake, and it is urged that in actions of this kind the mistake must be "clearly made out by proofs entirely satisfactory"; citing 1 Story, Eq. Jur. 152 et seq.; Leonis v. Lazzarovich, 55 Cal. 52; Hutchinson v. Ainsworth, 73 Cal. 452, 2 Am. St. Rep. 823, 15 Pac. 82. It was said in the latter case: "The conclusion from the sum of all the authorities on the subject is, not that relief must necessarily be denied because there is a conflict of testimony, for that would result in a denial of justice in some of the plainest cases calling for such relief, but that upon all the proofs, taking the facts as they appear to the court after eliminating testimony unworthy of credence, or based upon mistake or uncertainty, as in other cases, the mistake must be established in a clear and convincing manner, and to the entire satisfaction of the court." As was said in that case, so say we here, "Viewed in this light, and we cannot say the court was unauthorized by the testimony in the conclusion it reached." The draftsman did not attempt to explain how he came to make the mistake, and probably could have given no rational explanation had he been asked to do so. That it was a mistake clearly appears, we think, by great preponderance in the evidence; and, that being so, an explanation as to how it happened is unimportant and immaterial.

2. It is contended that appellant's consent to the contract was not free, but was induced by the mistaken belief that the title was in respondent, and that appellant was purchasing a valuable interest in the property, and that he was clearly entitled, upon discovery of the mistake, to rescind the contract, and that this he immediately offered to do. It appears from the testimony of appellant and the witness Sanchez that Mr. Munday advised appellant that respondent's title was superior to appellant's. Appellant testified: "I then told Mr. Sanchez to ask Mr. Munday what chance I had in that

suit. Then he answered me that I had no right in the world in the matter, except to bring suit or to buy the property." At another point in his testimony he said: "Mr. Munday told me that I had no right to the property whatever; that the attachment that I had was second to the one that Mr. Ward had. I found out that I did have title to that property— that Mr. Munday's advice was erroneous, when I went to you [speaking to his then counsel, Mr. Smith], which was about March 27, 1893." It appears from the evidence of both Meserve and Munday that up to the time the parties met in Meserve's office, February 24th, each of them believed that he had the better title through the sheriff's sales; and in order to convince Meserve, respondent's attorney, of his error, the negotiations on that day were suspended while they went to the clerk's office to consult the records, after which, and after consulting the notes of the abstract of title prepared for defendant, Meserve conceded Munday's position. There was, however, some question as to the regularity of the attachment proceedings by which appellant got his title, which the court found was at all times a subject of dispute between the parties. Mr. Munday, in rebuttal of appellant's testimony, testified that appellant was mistaken as to the time he was told he had no title; that it was some days before February 24th, and certainly prior to the making of the contract; and that he (Munday) did not know till that day that his client's title was superior to respondent's. There is much evidence tending to show that appellant knew all the facts as found by the court at the time he signed the contract, and that he was not then ignorant of the supposed strength of his own title. Mr. Munday testified: "The abstract was there before us, and I was buying what there was. I do not think 'perfect title' was mentioned, or any understanding of perfect title used. I understood it in this way: I stated to the parties the exact status of the title as I found it from the records—from this abstract or memorandum—there in your office. After that, and upon that, Mr. Yorba authorized me to make the offer of four thousand five hundred dollars. The Court: Question. For what? A. For whatever appeared on this— As a matter of fact, he said he could control this, these outstanding liens—these outstanding suits, rather; didn't care anything for them. . . . . Then—it was possibly my own suggestion—we split the difference between four

thousand five hundred dollars and five thousand dollars, making four thousand seven hundred and fifty dollars. One hundred dollars was paid, and a receipt given for it, and the contract was written out by Mr. Meserve. I looked it over. Everybody seemed to be satisfied. I went out with Mr. Yorba. Tried in different places to borrow money for him.'' We are unable to see that appellant was misled in any way by any representations of respondent, and, if he acted through any mistaken belief of the strength of respondent's title ,or the weakness of his own, his action was in the face of full information then in his own control and that of his attorney. He acted not only upon means of knowledge available, but upon actual knowledge. There is no fraud or unfairness alleged or proved, and we are unable to see why appellant should not be held to the performance of the contract fairly and intelligently entered into by him. Section 1577 of the Civil Code, relied upon, has no application, because there was not ''an unconscious ignorance . . . . of a fact material to the contract''; nor was there a ''belief in the present existence of a thing material to the contract which did not exist.''

3. It is claimed by appellant that there was no adequate consideration for the contract. It is not claimed by appellant that there was any fraud practiced upon him, or that there was anything unfair in the transaction. His claim rests wholly on the alleged mistake he made in supposing respondent's title superior to his own. But we have seen he was not mistaken, but acted with full knowledge of the record title of respondent. It appears, however, that respondent was then in possession of the premises. He disputed the regularity of appellant's attachment proceedings, while admitting that, if the lien was valid and legal, his deed took effect prior to respondent's deed; and it appears that an action is now pending in the lower court between appellant, as plaintiff, and respondent, as defendant, involving the regularity of said attachment proceedings, which action was determined in favor of this appellant, and was ''tried . . . . and submitted at the same time as the trial and submission of this action,'' and it was this attachment which the court found was at all times a subject of dispute between the parties. It is in evidence, and was found by the court, that the property was worth $9,000. Appellant's judgment under which

he claimed was for $1,300, and he claimed to be able to control the other pending action of Yorba and Davilla against Labracco; and he knew of the 'udgment lien of $312.75 in the action of Bacon against L....racco. There was therefore nothing unconscionable or unreasonable in his agreeing to pay $4,750 for respondent's title or claim to property which had cost appellant $1,300, and was worth $9,000. We think there was sufficient consideration to support the contract. By it all of respondent's rights were extinguished, and possession to be surrendered, and all litigation avoided. There was some value to appellant in these considerations, and, however small, they were given in good faith, and free from fraud, and will support the contract. Appellant got all he bargained for, and should not be heard to complain of the inadequacy of the consideration. He was in position at the time he signed the contract to know all that he learned later on, and, if he chose to purchase rather than fight for peace, he must abide the consequences of his own deliberate act. We find no error, and therefore recommend that the judgment and order be affirmed.

We concur: Haynes, C.; Belcher, C.

PER CURIAM.—For the reasons given in the foregoing opinion the judgment and order are affirmed.