[L. A. No. 372. In Bank.—February 2, 1899.]

## SHIRLEY C. WARD, Respondent, *v.* VICENTE YORBA, Appellant.

Vendor and Purchaser—Reformation of Contract of Sale—Mutual Mistake—Proof of Understanding of Parties.—A vendor of real estate is not entitled to have the contract of sale reformed so as to limit the contract for the sale of the property described, to the sale merely of his right, title, and interest in the property, on the ground of mistake, unless he shall show by satisfactory evidence that the agreement between him and the defendant was as alleged, and was so understood by both the defendant and himself when they signed the instrument. The terms of the written instrument, as actually signed, must prevail over previous negotiations, unless it is shown that by reason of a mutual mistake, it did not express their actual agreement.

Id.—Specific Performance—Want of Consideration—Superiority of Defendant's Title—Undisputed Prior Attachment.—Where it appeared that, at the time of the contract of sale, the vendee had a title to the property purchased which was in fact superior to the claim of the vendor thereto, as an execution purchaser, by reason of a prior attachment made by the vendee, to which his title related, and in respect to which there was no evidence that its validity had been disputed, prior to the date of the contract of sale, and, it appearing that the interest of the vendor in the property had then been extinguished by his failure to redeem from the sale made to the vendee under execution in the attachment suit, the vendor cannot maintain an action for specific performance of the contract of sale, for want of an adequate consideration for the contract.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order denying a new trial. Waldo M. York, Judge.

The facts are stated in the opinion of the court.

George H. Smith, for Appellant.

A. M. Stephens, Edwin A. Meserve, and Shirley C. Ward, for Respondent.

HARRISON, J.—The parties hereto entered into an agreement in writing February 24, 1893, by which the plaintiff agreed to sell to the defendant for the sum of four thousand seven hundred and fifty dollars certain property in the city of Los Angeles, and the defendant agreed to buy the same and pay said sum of money within thirty days thereafter. The circumstances leading up to this agreement are as follows, viz: The title to the property in question was originally in Francisca D. de Labracco, and in an action by Yorba, the defendant herein, against Labracco the property was attached March 5, 1892, and judgment was rendered in his favor April 20, 1892. Execution was issued upon this judgment July 10, 1892, and on August 20th the property was sold by the sheriff to Yorba. Prior to March, 1892, an action had been commenced against Labracco by one Bacon, in which a judgment was docketed against Labracco March 31, 1892, and under this judgment the property was sold to one Jarvis, and a sheriff's deed issued to him January 27, 1893. Jarvis immediately took possession of the property, and on January 30, 1893, conveyed the same to Ward, the plaintiff herein. By this conveyance the plaintiff became at its date vested with Labracco's title to the property, subject to whatever rights Yorba had acquired therein by the attachment and subsequent proceedings in his action against Labracco. Prior to February 24th negotiations on behalf of the plaintiff and defendant had been had for an adjustment of their claims to the property, and on the morning of that day Mr. Munday, as attorney for Yorba, and in company with him, visited the office of Mr. Meserve for the purpose of completing the negotiations and purchasing the property from Ward. Munday had previously advised Yorba that Ward's claim was superior

to his own, and that his best course was, to buy the property, {but he saw on that morning that he was mistaken, and it was also conceded by Meserve, after an examination of the abstract, that Yorba's claim was paramount to that of Ward. As a result of the negotiations upon that morning an instrument setting forth the above agreement was prepared and signed by the plaintiff and the defendant. Before the expiration of the thirty days Yorba was advised that he was not bound to carry out the contract, and gave to the plaintiff a notice of rescission, and afterward declined to make the payment provided in the instrument. Thereupon the plaintiff brought the present action. In his complaint he alleges that the written instrument does not express the actual agreement which was made, and that by a mistake of the scrivener it is drawn so as to require a conveyance of the property, whereas the agreement itself was for a purchase and transfer of merely his right, title, and interest therein, and he asks that the instrument be reformed accordingly, and that he have judgment against the defendant for its performance as so reformed. The court found in favor of this claim, and rendered judgment accordingly. This finding and the judgment thereon are assigned by the defendant as error.

1. The plaintiff was not entitled to have the instrument reformed as he had asked, unless he should show by satisfactory evidence that the agreement between him and the defendant was as he had alleged, and was so understood by both the defendant and himself when they signed the instrument. The court could not make a new contract for the parties, but could only cause their actual agreement to be expressed according to its terms; nor could it reform the instrument according to the terms in which Ward understood it, unless it should be shown that Yorba also had the same understanding of its terms. The terms of the written instrument which they signed would prevail over their previous negotiations, unless it should be shown that, by reason of a mutual mistake, it did not express their actual agreement.

At the time the instrument in question was signed, Ward was represented by Mr. Meserve as his attorney, and was himself in an adjoining office, and Yorba was represented by Mr. Munday. Yorba could neither speak nor understand English, and

the negotiations for the purchase were in fact conducted between Meserve and Munday—Meserve consulting with Ward from time to time, and Munday communicating with Yorba through an interpreter. There is evidence in the record that Ward proposed to sell only his interest in the land, and that this proposition was communicated to Munday, and was assented to by him; but it does not appear that the proposition was communicated by Munday to Yorba, or that it was agreed to by the latter. Munday was Yorba's attorney for the purpose of advising him in reference to the contract to be made, but he did not represent him for the purpose of making the contract. He had no authority from Yorba to make a contract for him, and evidence of his agreement with Ward to purchase his "interest" in the land would not bind Yorba, unless Yorba himself assented thereto. Munday had advised Yorba that he must either buy the property from Ward, or have a lawsuit on his hands, and Meserve testified that they came to his office that morning "with the proposition to buy and close out this property." While there Yorba authorized Munday to offer four thousand five hundred dollars "for the property," and after making this offer it was increased by Munday to four thousand seven hundred and fifty dollars. Neither Meserve nor Ward had any direct communication with Yorba, and there is no evidence that a proposition for the purchase by Yorba of Ward's "interest" in the land, as distinguished from a purchase of the land itself, was ever communicated to him. On the other hand, Yorba and Sanchez—the interpreter—both testified that the negotiations on the 24th and the offer by Yorba were for a purchase of the "property."

In seeking a reformation of the instrument, it was not sufficient for the plaintiff merely to show that Munday had assented to his proposition. It was also necessary to show that this proposition was communicated to Yorba and was assented to by him, for the court can reform the instrument only for the purpose of having it express the understanding and agreement of Yorba, and not that of Munday. Under these considerations, it must be held that the evidence before the court did not authorize it to direct a reformation of the instrument.

2. Upon the facts as found by the court, Yorba's title to the

land at the date of the agreement was superior to that of Ward.
His purchase at the sheriff's sale related to the date of the at-
tachment in the action in the judgment under which the sale
was made, and antedated the lien of the judgment under which
Ward's purchase was made. By this sale to him he acquired all
the title that Labracco had at the date of that attachment, sub-
ject to redemption within six months from his purchase. The
period of this redemption expired February 20th, so that on
the 24th his right to the land had become absolute. For the
purpose of vesting him with the evidence of his title he had
still to procure the sheriff's deed, but Ward had lost all right
or interest in the land by failing to redeem from this sale within
the six months, and whatever right in the land he acquired by
his purchase at the sheriff's sale was extinguished. Under the
agreement with the plaintiff Yorba would therefore acquire
nothing from Ward to which he was not already entitled, and
his promise to pay four thousand seven hundred and fifty dol-
lars was without any consideration. As under the law Ward
would be under obligation to surrender the property upon the
execution of the sheriff's deed, such surrender could form no
consideration for the promise of Yorba. The court finds, how-
ever, that the consideration to the defendant for the agreement
was the compromise of a claim that the attachment under which
his purchase was made was invalid. There is no evidence, how-
ever, that there had been any question between the plaintiff
and the defendant of the validity of the attachment under
which Yorba claimed the land prior to the trial of the present
action. The only dispute between them at the time of the con-
tract was as to the priority of their respective liens, but the
record fails to show that there was any question of the suffi-
ciency of either. At the trial herein the plaintiff attempted
to show that the attachment in Yorba's suit was defective, and
did not create a lien, but the court found against him on this
issue. There was no evidence, however, that any claim of this
defect was brought in question prior to entering into the con-
tract of February 24th. No such claim is made in the com-
plaint herein, and the finding of the court that there was is
without any evidence to support it.

3. Section 3391 of the Civil Code declares: "Specific perform-

ance cannot be enforced against a party to a contract . . . .
if he has not received an adequate consideration for the con-
tract." This provision, however, is but an affirmance of the
doctrine by which courts of equity were previously governed.
(*Bruck v. Tucker*, 42 Cal. 354.) As the defendant was the owner
of the land at the date of the contract, and as the interest of the
plaintiff therein had been extinguished by reason of his fail-
ure to redeem from the sale to the defendant, under this sec-
tion of the Civil Code, the plaintiff is not entitled to the re-
lief he seeks.

The judgment and order are reversed.

Temple, J., and Henshaw, J., concurred.

BEATTY, C. J., concurring.—I concur in the judgment and
generally in the opinion of Justice Harrison. It seems proper,
however, to add with respect to the alleged mistake in the writ-
ten contract that the evidence is in my opinion sufficient to
sustain the view that Yorba fully understood at the date of the
contract that he was not bargaining for a perfect title to the
property, but only such interest as Ward had acquired by his
deed from Jarvis, and that he was to take that title subject to
the Davilla claim and the lien of the Bacon judgment, both of
which encumbrances he was to take care of. On the other
hand, it is clear that up to the time the parties met to conclude
the contract they all believed that the Ward title was prior
and superior to the Yorba title. On that occasion Mr. Mun-
day—Yorba's legal adviser—discovered for the first time that
Yorba's title, by reason of this attachment, was prior to the
Ward title. This fact he communicated to Yorba's inter-
preter, but it seems probable that neither Yorba nor the in-
terpreter was made to understand the change thus wrought in
the situation, for, notwithstanding the discovery that Ward
apparently had nothing to sell, Yorba was still willing to give
him a round price for his conveyance. This willingness of
Yorba to buy finds its explanation in his assertion that he did
not know then or for nearly a month afterward that his own
title was the better. If this explanation is rejected, some other
reason must be found for his agreement to pay Ward four thou-

sand seven hundred and fifty dollars for the Jarvis title. The superior court finds that there was a question as to the validity of Yorba's attachment, and, therefore, and because Ward was in possession, Yorba was willing to pay this large sum to buy his peace. But there is no evidence in this record that there was then any question as to the attachment, and it is now found that it was regular and valid. It is true Ward was in possession of the land, but if he exacted an agreement to pay him four thousand seven hundred and fifty dollars to yield a possession which it was his duty to yield without compensation he can hardly expect a court of equity on that showing to reform a mistake in the contract in order that it may be specifically enforced. Disregarding, then, the mere fact of Ward's possession and the power of annoyance which that gave him, it appears that Yorba was induced by some mistake to agree to give four thousand seven hundred and fifty dollars for a worthless title. Aside from the mistake there was no consideration for his promise, and in such a case equity will not lend its aid to enforce performance.

Garoutte, J., dissented.

McFARLAND, J., dissenting.—I dissent, and adhere to the conclusion reached at the first hearing. (*Ward v. Yorba* (Aug. 2, 1898), 54 Pac. Rep. 80.) I think that the judgment and order appealed from should be affirmed.

Rehearing denied.