## E. CLEMENS HORST CO. v. FEDERAL MUT. LIABILITY INS. CO.

### No. 4246.

District Court, D. Massachusetts.
April 30, 1940.

Ropes, Gray, Boyden & Perkins and Charles B. Rugg, all of Boston, Mass., for plaintiff.

David H. Fulton, of Boston, Mass., for defendant.

McLELLAN, District Judge.

This suit, started prior to the adoption of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, seeks reformation of certain insurance contracts and recovery of a portion of the premiums paid thereunder, alleged to be in excess of the amounts due according to the true agreement of the parties. The plaintiff is a New Jersey corporation, and the defendant is a Massachusetts corporation. The case was tried upon written depositions and upon certain exhibits. · Copies of portions of the California Code· of Civil Procedure, the California Political Code and the California Civil ·Code were introduced by· stipulation.

### Findings of Fact.

The plaintiff is a hop grower, and carries on certain allied. industries in connection therewith. It maintains not only farms, but canneries and shops and the like used in the conduct ·of its business. Early in September, 1927, the plaintiff, through a broker, sought a policy of workmen's compensation insurance from the defendant to cover its operations in the State of California. The plaintiff had held a similar policy with the defendant for a period from September 30, 1920 until September 30, 1921, but this policy was not renewed. The experience of the defendant company on that policy was not satisfactory. Accordingly, when the plaintiff's application was received in 1927, the matter was carefully considered by local officers of the defendant. It was then found that the minimum legal rates on business such as that of the plaintiff had increased during the interval between 1921 and 1927. Moreover, in 1921, the Insurance· Commissioner of the State of California had approved an experience rating plan, more fully described below, under .which· those employers whose record was good were able to obtain their insurance at a lower rate and those whose record was poor were forced to pay a rate higher than the average. Although the exact rating of the plaintiff for the year for which the insurance was sought was not at that time available, it was determined that from previous ratings, the plaintiff was likely to carry a debit rating, that it be required to pay a rate higher than · the minimum legal rates prescribed for the classifications in which the plaintiff employed men. After ascertaining these facts, the defendant decided to take the risk, and on September

6, 1927, a policy was issued to run from September 30, 1927, to September 30, 1928. Since the experience rating of the plaintiff had not then appeared, the policy was written at the basic rates, subject to increase or decrease upon publication of the plaintiff's experience rating. The following language was used: "Rates herein enumerated are also subject to 'such increase or decrease as may result by the application of the Schedule Rating Plan and/or the Experience Rating Plan adopted by the Rating Board or Bureau having jurisdiction and approved by the Supervising Authority having jurisdiction if either or both of such plans by their rules are applicable to the risk."

A further rider provided: "The company agrees to allow any reduction in the policy rates which may be promulgated by the California Inspection Rating Bureau under the Industrial Compensation Rating Schedule and/or the California Experience Rating Plan as approved by the Insurance Commissioner of California; and this employer agrees to accept any increase in the policy rates which may be promulgated by the California Inspection Rating Schedule and/or the California Experience Rating Plan."

The policy provided for cancellation by either party upon notice. Section 602b of the California Political Code required the Insurance Commissioner of the State to fix classifications and minimum rates for workmen's compensation insurance to apply to all carriers licensed to do that type of business in California. In addition, the Insurance Commissioner was authorized in his discretion to approve a uniform system of merit rating. The Insurance Commissioner was also authorized to require every insurance carrier, which insured employers or employees under the workmen's compensation act, St.Cal.1917, p. 831, to file with its annual statement a sworn report of its loss experience in such detail and form as he might prescribe. The Insurance Commissioner did approve a plan for merit rating in 1921.

To assist the Insurance Commissioner in his duties under these laws, the California Inspection Rating was organized. It is a voluntary association, supported by the various carriers doing a compensation business in the State. Among its other functions, it promulgates experience ratings for individual employers, under the merit rating plan approved by the Insurance Commissioner in 1921. During the period in question, it made up individual ratings from experience data submitted by the various previous carriers insuring the particular employer, for a period of five full years next preceding the year during which the rating was made up. The experience data used consisted of audited payrolls, together with a summary of compensation and medical losses in each classification involved. The ratings, when ready for release, were issued in the form of cards, which were sent to all members of the Bureau simultaneously, either just before, or sometimes just after, the time for renewal of any particular policy. Individual ratings thus issued were not approved by the Insurance Commissioner, but the plan under which they were promulgated was approved by him, acting under his statutory authority. After promulgation of a rating, the employer was free to investigate the data upon which it was computed, and in case of error seek a correction. As to corrections, the rules of the Bureau provided:

"In the event of the discovery of an error in a published Bureau rate, a corrected card shall be immediately published.

"If the corrected card is published within a period of ninety days after the inception date of the policy affected by the change, the correction must be applied as of the effective date of the preceding rating.

"If the corrected card is published after the ninety-day period, then the correction, if an increase over the preceding rate, shall be applied as of the date of issuance of the corrected card; if a decrease, the corrected rate may be applied as of the effective date of the preceding rate."

On October 21, 1927, pursuant to this plan, the California Inspection Rating Bureau issued the plaintiff's rating card. The plaintiff carried a debit rating of 126%. The defendant would not have written the policy had it expected a credit rating (one of less than 100%) and if such a rating had in fact been issued, the defendant would then have had an opportunity to cancel the policy. In fact, the plaintiff's debit rating was substantially increased over that of the previous year. A rider was then attached to the policy setting forth the premiums to be paid in accordance with the rating as issued. The plaintiff now asserts this rider should be reformed. The reason for not here setting forth a copy of this rider is that it

was not adduced in evidence. I find, however, that in form though not in figures, it is like the rider upon the second policy, a copy whereof appears below.

The policy then remained in force for the rest of the year. The plaintiff took no steps to investigate the cause for its increased debit rating. On or about September 15, 1928, the defendant issued a renewal policy for another year, beginning September 30, 1928. Again, as the new experience rating for the plaintiff had not been issued, the policy was written at the manual or basis rate, subject to increase or decrease by the experience rating when issued. In this case, the plaintiff's rating issued in September prior to the inception date of the policy, the plaintiff being given a debit rating of 183%. Again a rider was attached to the policy fixing the premiums in accordance with the experience rating. This rider reads:

### Rate Revision Endorsement

It is hereby understood and agreed, that the remuneration earned by employes of the Assured, on and after September 30, 1928, shall be subject to a premium charge calculated at the rate or rates set forth in the schedule below, which is a part of this Endorsement in lieu of the rates elsewhere provided for these Classifications in the below described Policy to which this Endorsement is attached:

| Classification | Manual Rate | Adjusted Rate |
|---|---|---|
| #6504—Food Sundries Mfg. (N.O. C.) One Mile Southwest of M. Street Bridge, West Sacramento, California. | $1.27 | $2.34 |
| #3632—Machine Shops—excluding foundry East End of 8th Street Bridge, Sacramento, California. | 2.23 | 4.08 |
| #2111—Canneries (N.O.C.)—excluding can Mfg. 2 Miles East of Wheatland, California. | 1.54 | 2.65 |
| #2111—Canneries (N.O.C.)—excluding can Mfg. | 1.54 | 2.82 |
| #0018—Farms—N.O.C. | 2.27 | 4.15 |
| #8810—Clerical | .08 | .15 |
| #8742—Salesmen | .28 | .51 |
| #7205—Drivers | 2.54 | 4.65 |
| #7380—Chauffeurs | 1.4. | 2.58 |

Attached to and forming part of Policy No. Cal. C—81598 dated at San Francisco, California September 30, 1928, issued by Federal Mutual Liability Insurance Company to E. Clemens Horst Co. and/or E. Clemens Horst, Trustee

Countersigned September 14, 1928     [s] O. S. Coates
*Assistant Resident Manager*

If one were curious enough to compare the Adjusted Rate items with the Manual Rate items in the rider, he would find that save in two instances the adjusted rate is 183% of the manual rate. The discrepancy as to the two items is due to a further adjustment of the manual rate in accordance with a Schedule Rating Plan, so-called, the nature of which is here of no importance. The plaintiff seeks reformation of this rider also.

For the two years preceding September 30, 1927, the plaintiff was insured with the Metropolitan Casualty Insurance Company. It is the plaintiff's contention that certain errors were made by that company in its report of experience data to the California Inspection Rating Bureau, which errors resulted in the high ratings issued to the plaintiff.

I find further as follows: Prior to the year 1927, workmen's compensation insurance was not compulsory in California for employees engaged in farm work. The minimum rate legislation outlined above did not apply to ordinary employer's liability policies. The plaintiff carried with the Metropolitan a regular compensation policy to cover those employees engaged in work for which such coverage was compulsory, and an employer's liability policy, with lower premiums, to cover its employees engaged in farm work. The Metropolitan originally reported losses suffered both under the compensation policy and under the employer's liability policy to the California Inspection Rating Bureau as compensation losses, and these figures were used by the Bureau in computing the plaintiff's debit rating in each year here involved. In the month of September, 1929, the plaintiff first discovered this situation. Subsequently, the Metropolitan filed what purported to be corrected loss data with the Bureau, which used these later figures in computing the plaintiff's rating for subsequent years. Had such figures been originally used for the years in question, the plaintiff's ratings would have been 96% and 114% respectively. In a letter from the Metropolitan, adduced by the defendant, without objection from the plaintiff, it is said, and I find: "that the claims occurring under our Employers' Liability coverage were misquoted and thrown under the Compensation Policies." and "These claims were settled on a Compensation basis."

The plaintiff asked the Insurance Commissioner of California to lower the plaintiff's minimum rating for the years in question. This he refused to do.

The plaintiff, as heretofore stated, asks that the riders be reformed to provide that premiums are to be paid at the rate which it contends the Bureau should have promulgated. In so far as a question of fact is involved, I find on all the evidence that the defendant would have been unwilling to have continued on the policy in either case at the rates which the plaintiff contends would have been correct. And the plaintiff has failed to show and I can not find that the defendant would ever have been willing or ever evinced any willingness to write riders of the kind into which the defendant seeks to have the existing riders reformed. The policies, including the riders thereon, were intended to mean nothing different than their language indicates. Nor did the parties or either of them contemplate any legal consequences other than those which inhere in the instruments themselves.

### Conclusions of Law.

■ The plaintiff is not entitled to reformation or revision of the riders attached to the policies of compensation insurance for the years in question. The California Civil Code provides:

"§ 1565. The consent of the parties to a contract must be:

"1. Free;

"2. Mutual; and,

"3. Communicated by each to the other."

"§ 1567. An apparent consent is not real or free when obtained through:

"1. Duress;

"2. Menace;

"3. Fraud;

"4. Undue influence; or

"5. Mistake."

"§ 1576. Mistake may be either of fact or law."

"§ 1577. Mistake of fact is a mistake, not caused by the neglect of a legal duty on the part of the person making the mistake, and consisting in:

"1. An unconscious ignorance or forgetfulness of a fact past or present, material to the contract; or,

"2. Belief in the present existence of a thing material to the contract, which does not exist, or in the past existence of such a thing, which has not existed."

"§ 1578. Mistake of law constitutes a mistake, within the meaning of this article, only when it arises from:

"1. A misapprehension of the law by all parties, all supposing that they knew and understood it, and all making substantially the same mistake as to the law; or,

"2. A misapprehension of the law by one party, of which the others are aware at the time of contracting, but which they do not rectify."

"§ 3399. When, through fraud or a mutual mistake of the parties, or a mistake of one party, which the other at the time knew or suspected, a written contract does not truly express the intention of the parties, it may be revised, on the application of a party aggrieved, so as to express that intention, so far as it can be done without prejudice to rights acquired by third persons, in good faith and for value."

"§ 3400. For the purpose of revising a contract, it must be presumed that all the parties thereto intended to make an equitable and conscientious agreement."

"§ 3401. In revising a written instrument, the court may inquire what the instrument was intended to mean, and what were intended to be its legal consequences, and is not confined to the inquiry what the language of the instrument was intended to be."

Neither under these provisions of the Code, nor otherwise, is the plaintiff entitled to reformation, for the reasons among others that it has failed to show that the parties in fact agreed upon any contract other than that expressed in the riders, or that the instruments were intended to mean anything different than their language indicates or that the parties contemplated any legal consequences other than those which inhere in the instruments themselves. Pertinent to one or more of these reasons are the California statutes above set forth and the following authorities:

In National Automobile Ins. Co. v. Industrial Accident Commission of California, 27 Cal.App.2d 225, 80 P.2d 1024, 1025, it is said: "But in the absence of any evidence of petitioner's intention, other than that shown by the policy, the only conclusion which can be reached is that the minds of the parties never met. There

could not therefore be a reformation to 'truly express the intention of the parties', for there was no evidence to show a common intent. A showing of a common intent is essential where it is sought to reform a contract on the ground of mutual mistake. Meyerstein v. Burke, 193 Cal. 105, 222 P. 810; Ward v. Yorba, 123 Cal. 447, 56 P. 58; Bank of Fruitvale v. Fidelity, etc., Co. 35 Cal.App. 666, 170 P. 852; 53 Cor.Jur. 945, par. 60; Cooley's Briefs on Insurance, 2d Ed., p. 1429."

See also Burt v. Los Angeles Olive Growers Ass'n, 175 Cal. 668, 166 P. 993. The same results are reached elsewhere. In Russell v. Shell Petroleum Corporation, 10 Cir., 66 F.2d 864, 867, it is said: "To justify reformation on the ground of mistake, the mistake must have been made in the drawing of the instrument and not in the making of the contract which it evidences. Robinson v. Korns, 250 Mo. [663] 665, 157 S.W. 790; Curtis v. Albee, 167 N.Y. 360, 60 N.E. 660. A mistake as to the existing situation, which leads either one or both of the parties to enter into a contract which they would not have entered into had .they been apprised of the actual facts, will not justify reformation. It is not what the parties would have intended if they had known better, but what they did intend at the time, informed as they were."

 And see Hunt v. Rhodes, Rousmaniere's Adm'r, 1 Pet. 1, 7 L.Ed. 27; Ritson v. Atlas Assurance Co. Ltd., 279 Mass. 385, 181 N.E. 393; Williston on Contracts, Sec. 1549; Restatement of Contracts, Sec. 504. As stated by Professor Williston, "Still more clearly if, because of mistake as to an antecedent or existing situation, the parties make a written instrument which they might not have made, except for the mistake, the court cannot reform the writing into one which it thinks they would have made, but in fact never agreed to make."

I do not understand the plaintiff to have contended, in its brief or otherwise, that in the absence of a right to reformation this suit can be maintained. At any rate the plaintiff is not entitled to reformation or to other relief.

Under the Equity Rules, 28 U.S. C.A. following section 723, which were in force when this suit was begun, the appropriate decree would have provided for dismissal of the bill, but by virtue of the Federal Rules of Civil Procedure here applied, judgment is to be entered for the defendant.