[Civ. No. 17948. Fourth Dist., Div. Two. Feb. 24, 1978.]

LA MANCHA DEVELOPMENT CORPORATION,
Plaintiff and Appellant, v.
NORMAN F. SHEEGOG et al., Defendants and Respondents.

**COUNSEL**

Fierstein & Sturman and Harvey Fierstein for Plaintiff and Appellant.

Jack M. Peters, Rutan & Tucker and John B. Hurlbut, Jr., for Defendants and Respondents.

**OPINION**

**KAUFMAN, J.**—Insofar as defendants Sheegog (defendants) are concerned, plaintiff instituted this action to reform a deed by inserting therein a covenant for restricted use of the property conveyed and to enjoin defendants, who were the named grantees, from conveying the property to any person unwilling to abide by the restrictive covenant. Summary judgment was entered in favor of defendants, and plaintiff appeals.

Prior to January 9, 1975, plaintiff was the owner of two contiguous parcels of real property located at the southwest corner of Warner Avenue and Newland Street in the City of Huntington Beach. One parcel, which we shall refer to as the corner parcel, was at that time occupied by Standard Oil Corporation and was being used as a service station. The other parcel was developed as a small commercial center, a portion of which was a store leased by plaintiff to Southland Corporation doing business as 7-Eleven Stores (Southland) for the retail sale of dairy goods, groceries and alcoholic beverages. For purposes of identification we shall refer to the latter parcel as the commercial parcel.

On January 9, 1975, plaintiff agreed to sell the corner parcel to Southland which apparently intended to build a suitable building and move its 7-Eleven store operation from the commercial parcel to the corner parcel. The written agreement between plaintiff and Southland provided that, upon consummation of the purchase by Southland, plaintiff would "record a covenant" that the property comprising the 7-Eleven store (located at 17031 Newland Street) "shall never be used for a grocery store or for the retail sale of any food or food products, dairy products or alcoholic beveraged [sic] (including beer and wine) for consumption off the premises."

An escrow was opened at Lawyers Title Insurance Corporation (Lawyers Title) which closed May 15, 1975. The grant deed from plaintiff to Southland was recorded in the office of the Orange County Recorder that day. The legal description of the property conveyed is contained on an attachment to the deed designated "Exhibit 'A'." Following the legal description of the property conveyed there appears a heading, "Subject to The Following:" under which, so far as is here pertinent, appears the following: "cancellation of existing lease for 7-Eleven Store #2013-13764, which is located at 1703 Newland Street, Huntington Beach, California, (adjacent to subject property) 15 days after a new store is open for business; and Grantor shall not rent space now occupied by 7-Eleven Store #2013-13764, to a lessee or sub-lessee who shall conduct or permit the conduct on the premises of, and the property at 1703 Newland Street, Huntington Beach, California, shall never be used for, a grocery store or for the retail sale of any food or food products, dairy products or alcoholic beverages (including beer and wine) for the [sic] consumption off the premises." The deed was apparently prepared by Lawyers Title.

On September 30, 1975, plaintiff sold to defendants the commercial parcel including, of course, the store occupied by the 7-Eleven market. The sale transaction was handled through an escrow, again at Lawyers Title. At the time the transaction closed, Southland was still in possession of the market. At the time of the sale defendants had no actual knowledge or suspicion of the purported restriction on the use of the 7-Eleven store property contained in the agreement between plaintiff and Southland or the deed from plaintiff to Southland or of any claim of such restriction on use by either plaintiff or Southland. The deed by which plaintiff conveyed the commercial property to defendants contained no reference to any such restrictions nor any reference to the corner parcel theretofore conveyed by plaintiff to Southland. Defendants did know that Southland had purchased the corner property and intended to move its 7-Eleven operation to its new building on that property within a few months.

The scope of plaintiff's complaint is not clear. Plainly, plaintiff seeks to reform the deed by which it conveyed the commercial parcel to defendants to add thereto the restriction against use of the 7-Eleven store property at 17031 Newland Street as a grocery store or for retail sale of any food, dairy products or alcoholic beverages for consumption off the premises. It is alleged in the complaint that it was the mutual intention of plaintiff and defendants that such restriction be included and that defendants had actual and constructive knowledge of the restriction. However, in the prayer, plaintiff also requested that defendants be enjoined pendente lite and permanently from transferring title to the commercial parcel "to any persons, transferees or grantees, unless such party is willing to accept such conveyance . . . subject to the RESTRICTIONS." The uncertainty is whether the request for injunctive relief, which would constitute partial enforcement of the restriction, is based only on the asserted right to reformation or some asserted right of enforcement even without reformation. In appellant's opening brief the first issue on appeal is stated to be whether defendants' title to the commercial parcel is "subject to the servitude restrictions on [that parcel] with respect to the sale of alcoholic beverages." However, in its reply brief, in response to several contentions of defendants in the respondents' brief, plaintiff unequivocally asserts that it does not seek to enforce the restriction in the absence of reformation of the deed.

We shall not attempt to resolve this dispute. Suffice it to say that, to the extent plaintiff seeks to enforce the land use restriction in the absence of reformation of the deed by which it conveyed the property to defendants,

the summary judgment was properly granted. ■ The uncontroverted facts show there is no reference to the restriction in the deed from plaintiff to defendants and plaintiff, having conveyed all its interest in both the corner parcel and the commercial parcel, retains no interest in any property benefited by the land use restriction. As defendants point out, under these circumstances plaintiff lacks standing to enforce the restriction. (*Kent* v. *Koch,* 166 Cal.App.2d 579, 584 [333 P.2d 411]; 3 Witkin, Summary of Cal. Law (8th ed. 1973) Real Property, § 403, pp. 2094-2095.) Plaintiff argues this contention of defendants should not be entertained because it was not raised in the trial court. ■ However, where, as here, it is based on undisputed facts and raises only a question of law, a contention not raised in the trial court may nevertheless be properly considered on appeal. (*Tyre* v. *Aetna Life Ins. Co.,* 54 Cal.2d 399, 405 [6 Cal.Rptr. 13, 353 P.2d 725]; *Burdette* v. *Rollefson Construction Co.,* 52 Cal.2d 720, 725-726 [344 P.2d 307].)

We come then to the principal question on appeal, whether there exists any triable issue of material fact. In the circumstances of this case, resolution of that issue requires a determination whether there is any basis on which plaintiff could be granted reformation.

Civil Code section 3399 provides: "When, through fraud or a mutual mistake of the parties, or a mistake of one party, which the other at the time knew or suspected, a written contract does not truly express the intention of the parties, it may be revised, on the application of a party aggrieved, so as to express that intention, so far as it can be done without prejudice to rights acquired by third persons, in good faith and for value."

■ Plaintiff's complaint is based on theories of both mutual mistake and mistake of one party (itself) known or suspected by the other. However, in answers to interrogatories plaintiff admitted, albeit somewhat evasively, it had no evidence that defendants had any actual knowledge or suspicion of the existence of the asserted land use restrictions. Declarations by both Mr. and Mrs. Sheegog and the real estate broker who represented them in the purchase of the commercial parcel establish that neither they nor the broker had any such actual knowledge or suspicion. Thus, recovery by plaintiff on the theories of mutual mistake or mistake of one party actually known or suspected by the other is not possible. (Cf. *Bailard* v. *Marden,* 36 Cal.2d 703, 708-710 [227 P.2d 10]; *Meyerstein* v. *Burke,* 193 Cal. 105, 107-109 [222 P. 810];

*City of Cypress* v. *New Amsterdam Cas. Co.,* 259 Cal.App.2d 219, 225 [66 Cal.Rptr. 357].)

Plaintiff contends, however, that triable issues of fact exist as to whether or not defendants had constructive notice or imputed knowledge of the asserted land use restriction.[1] It is argued that in acting as escrow agent in the transaction by which plaintiff conveyed the corner parcel to Southland, Lawyers Title obtained knowledge of the land use restriction and that this knowledge is imputed to defendants because Lawyers Title also acted as escrow agent in the transaction between plaintiff and defendants. The argument that defendants had constructive notice of the land use restriction has two bases. First, it is urged that Southland's possession of the 7-Eleven store property at the time defendants purchased the commercial parcel was such as to charge defendants with constructive notice of the land use restriction. Secondly, it is urged that recordation of the deed by which plaintiff conveyed the corner parcel to Southland imparted constructive notice of the land use restriction on the commercial parcel inasmuch as the street address of the 7-Eleven store was set out thereby sufficiently identifying the burdened property.[2] This contention and these arguments assume, of course, that imputed knowledge and constructive notice of the other party's unilateral mistake constitute bases for reformation.

■ We shall assume, without deciding, that knowledge of a unilateral mistake imputed to a party from his properly authorized agent would be a sufficient basis for reformation. (See *Stare* v. *Tate,* 21 Cal.App.3d 432, 437 [98 Cal.Rptr. 264]; but cf. *Ward* v. *Yorba,* 123 Cal. 447, 450 [56 P. 58].) Nevertheless, the argument that Lawyers Title's knowledge of the land use restriction is imputed to defendants is not meritorious. The escrow between plaintiff and Southland, in which Lawyers Title obtained the knowledge, closed May 15, 1975, long before the escrow between plaintiff and defendants was opened. More importantly, defendants were not a party to the escrow between plaintiff and Southland. Under these circumstances, Lawyers Title's knowledge of the restriction is not imputable to defendants. "It is true that in *Early* v. *Owens,* 109 Cal.App. 489 [293 Pac. 136], the court held that an escrow holder was the agent of both parties to the escrow, and that knowledge of the agent was imputed to the principals. The case seems to be predicated on the assumption that

---

[1]Actually these are probably questions of law, since the underlying facts are basically undisputed.

[2]Improperly, this argument is first made in the appellant's reply brief. (See 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 442, p. 4405, and cases there cited.)

all parties to an escrow have the legal right to examine all the papers deposited in the escrow. But, at most, the rule of that case simply means that all parties to an escrow are chargeable with notice of the papers in that escrow. *Where there are two escrows, the doctrine of imputed knowledge has no application to documents deposited in the escrow to which the party sought to be charged with notice was not a participant.*" (*Thompson* v. *Stoakes,* 46 Cal.App.2d 285, 292 [115 P.2d 830], italics added; accord: *Menzel* v. *Salka,* 179 Cal.App.2d 612, 619 [4 Cal.Rptr. 78]; *Anderson* v. *Geo. L. Barney Co., Inc.,* 1 Cal.App.2d 340, 346 [36 P.2d 717].)

■ We need not decide whether defendants may be charged with constructive notice on either of the bases urged or whether an issue of fact exists as to such constructive notice, for it is our conclusion that constructive notice of the unilateral mistake of the other party is not a sufficient ground for reformation.

First, plaintiff has cited no case in which reformation was granted on the basis of constructive notice, and we have discovered none. *Carpenter* v. *Froloff,* 30 Cal.App.2d 400 [86 P.2d 691], on which plaintiff appears to place some reliance, is completely inapposite. Insofar as it is pertinent at all, it involves a cross-complaint for reformation by a grantee against her grantor. The mistake involved was that not all the property promised to be conveyed was included in the deed. It was alleged and found that the mistake was *known* to the grantor, and, of course, the court indicated that would have been a sufficient basis for reformation had it been shown the grantor owned the additional property. (30 Cal.App.2d at pp. 402-403, 405, 407-409.) Judgment for the cross-complainant was reversed, however, because the grantor's ownership of the additional property was neither pleaded nor found. The only case we have discovered that directly bears on the question is *Eureka* v. *Gates,* 137 Cal. 89 [69 P. 850]. In that case the appellant's contention that possession imparted constructive knowledge of the mistake was rejected. The court stated in part: "The purchasers certainly did not understand her possession in this way, as appears from the evidence . . . ." (137 Cal. at p. 94.) The implication is that, absent actual knowledge or suspicion of the true facts from the fact of possession, reformation would be inappropriate.

Second, the mistake of one party is a sufficient basis for reformation only when the mistake is known or suspected by the other party and, as a result, the writing does not truly express the intention of the parties. (Civ. Code, § 3399; *Bailard* v. *Marden, supra,* 36 Cal.2d at pp. 708-710.) It must

appear there was a mutual intention of the parties. (*Bailard* v. *Marden, supra.*) When the mistake of one party is actually known or suspected by the other party, the other party's intention to enter into the transaction on the basis of the unmistaken facts is presumed. (Civ. Code, § 3400;[3] *Stare* v. *Tate, supra,* 21 Cal.App.3d at p. 438.) This presumed intention is based on an estoppel resulting from the other party's inequitable conduct. (*Stare* v. *Tate, supra,* 21 Cal.App.3d at pp. 438-439.) In the absence of actual knowledge or suspicion or, at the very least, actual knowledge or suspicion of a duly authorized agent imputed to the other party, there is no inequitable conduct on which to predicate an estoppel. Generally speaking, the knowledge necessary to constitute an estoppel must be actual knowledge. (*Meyer* v. *Glenmoor Homes, Inc.,* 246 Cal.App.2d 242, 264 [54 Cal.Rptr. 786, 55 Cal.Rptr. 502]; *Benson* v. *Andrews,* 166 Cal.App.2d 44, 52 [332 P.2d 698]; *Primm* v. *Joyce,* 87 Cal.App.2d 288, 291 [196 P.2d 829].)

Having concluded constructive notice of a unilateral mistake is insufficient basis for reformation, defendants' constructive notice of the asserted land use restriction and any possible factual issue as to such constructive notice (see fn. 1, *ante*) are irrelevant to any material issue in the case. There is, therefore, no triable issue of material fact, and on the facts established, defendants were entitled to summary judgment.

Accordingly, the judgment is affirmed.

Tamura, Acting P. J., and McDaniel, J., concurred.

---

[3]Civil Code section 3400 provides: "For the purpose of revising a contract, it must be presumed that all the parties thereto intended to make an equitable and conscientious agreement."

This section is of no help to plaintiff. There is nothing inequitable or "unconscientious" about defendants' receiving title to the commercial parcel unburdened by the restriction. From the established facts, that is what they thought they were buying and that is what they paid for.